# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

    v.

GARY G. BELL, et al.,

        Defendants.

Civil Action No.

1:07-cv-00120-CKK

---

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM IN OPPOSITION TO DEFENDANT GARY BELL'S MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS FOR FAILURE TO STATE A CLAIM**

Charles D. Stodghill (DC Bar No. 256792)
Matthew B. Greiner (DC Bar No. 448480)
Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street N.E.
Washington, DC 20549
Telephone: (202) 551-4413 (Stodghill)
Facsimile: (202) 772-9246 (Stodghill)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

FACTUAL BACKGROUND ....................................................................................... 1

A.    Nature and History of These Proceedings ............................................... 1

B.    The Specific Allegations of the Commission's Complaint ...................... 5

ARGUMENT .............................................................................................................. 8

     I.     THE COURT SHOULD NOT STAY THIS ACTION ............................... 8

     II.    THE COURT SHOULD NOT TRANSFER THIS
          ACTION .................................................................................................. 13

     III.   THE COMPLAINT SHOULD NOT BE DISMISSED ............................. 18

          1.   The Applicable Legal Standards Under Rule 12(b)(6) ..................... 18

          2.   The Complaint Adequately Alleges Claims for
              Aiding and Abetting Ahold's Violations of the
              Exchange Act's Reporting and Books and Records
              Provisions .......................................................................................... 19

          3.   The Complaint Properly Pleads Aiding and Abetting
              Against Bell ....................................................................................... 21

              A.   Primary Violation ...................................................................... 21

              B.   General Awareness of Role in Improper Conduct ..................... 22

              C.   Knowingly Provided Substantial Assistance .............................. 25

          4.   The Complaint Sufficiently Alleges that the
              Misrepresentations Were Material .................................................. 28

CONCLUSION ......................................................................................................... 30

## TABLE OF AUTHORITIES

### CASES

*Atchinson v. District of Columbia*, 315 U.S. App. D.C. 318, 73 F.3d 418
(D.C. Cir. 1996) ................................................................................................18

*Barry Farm Resident Council v. U.S. Department of the Navy*, Nos. 96-
01450, 96-01700, 1997 U.S. Dist. LEXIS 2754 (D.D.C. Feb.18, 1997) ......................8

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988).......................................................28

*Brock v. Tolkow*, 109 F.R.D. 116 (E.D.N.Y. 1985) ...............................................9

*Conley v. Gibson*, 355 U.S. 41 (1957) ................................................................18

*Federal Sav. & Loan Ins., Corp. v. Molinaro*, 889 F.2d 899 (9th Cir.
1989) ................................................................................................................9

*Estate of Gaither v. District of Columbia*, No. 03-1458, 2005 U.S. Dist.
LEXIS 35426 (D.D.C. Dec. 5, 2005)..............................................................8, 9, 10, 12

*Ganino v. Citizens Utilities Company*, 228 F.3d 154 (2d Cir. 2000).................................28

*Greenwood Partners v. New Frontier Media Inc.*, No. 99 CIV. 9099 WK,
2000 WL 278086 (S.D.N.Y. Mar. 14, 2000) .................................................13

*Gross v. Owen*, 95 U.S. App. D.C. 222, 221 F.2d 94 (D.C. Cir. 1955).............................14

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) .................................................18

*Howard v. SEC*, 363 U.S. App. D.C. 100, 376 F.3d 1136 (D.C. Cir. 2004) .........22, 23, 24

*Investors Funding Corp. of New York v. Jones*, 161 U.S. App. D.C. 420,
495 F.2d 1000 (D.C. Cir. 1974).................................................................13

*Investors Research Corp. v. SEC*, 202 U.S. App. D.C. 168, 628 F.2d 168
(D.C. Cir. 1980) .......................................................................................21, 22, 25

*Kowal v. MCI Communications Corp.*, 305 U.S. App. D.C. 60, 16 F.3d
1271 (D.C. Cir. 1994) ...............................................................................18

*National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994)......................18

*Ponce v. SEC*, 345 F.3d 722 (9th Cir. 2003)......................................................22

*SEC v. Apolant*, 411 F. Supp.2d 271 (E.D.N.Y. 2006)................................................25, 26

*SEC v. Cohen*, No. 4:05 CV 371, 2006 WL 2225410 (E.D. Mo. Aug. 2, 2006) ...............................................................................................................29

*SEC v. Dresser Industries, Inc.*, 202 U.S. App. D.C. 345, 628 F.2d 1368 (D.C. Cir. 1980) ...................................................................................8, 9, 10

*SEC v. Ernst & Young*, 775 F. Supp. 411 (D.D.C. 1991) ................................................16

*SEC v. Intelliquis Intern., Inc.*, No. 2:02-CV-674 PGC, 2003 WL 23356426 (D. Utah, Dec. 11, 2003)...............................................................................26

*SEC v. McNulty*, 137 F.3d 732 (2d Cir. 1998) ................................................................22

*SEC v. Morris*, No. CIV.A. H-04-3096, 2005 WL 2000665 (S.D. Tex., Aug. 18, 2005)..........................................................................24

*SEC v. Orr*, No. 04-74702, 2006 WL 542986 (E.D.Mich., Mar. 6, 2006) ............26, 27, 28

*SEC v. Savoy Industrial, Inc.*, 190 U.S. App. D.C. 252, 587 F.2d 1149 (D.C. Cir. 1978) ...............................................................................13 19, 20

*SEC v. Stansbury Holdings Corp.*, No. 06-CV-00088-REB-BNB, 2007 WL 552248 (D. Colo. Feb. 20, 2007)...............................................26

*SEC v. Wallace*, 94 F. Supp. 2d 1 (D.D.C. 2000) .............................................................13

*SEC v. Washington Inv. Network*, 374 U.S. App. D.C., 475 F.3d 392 (D.C. Cir. 2007) ........................................................................................24

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ........................................................................18

*Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66 (D.D.C. 1998) ............................................................................................................15

*Sheraton Operating Corp. v. Just Corporate Travel*, 984 F. Supp. 22 (D.D.C. 1997) ...............................................................................................14

*Steinberg & Lyman v. Takacs*, 690 F. Supp. 263 (S.D.N.Y. 1988) ..................................13

*TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438 (1976) ...........................................28

*Trout Unlimited v. U.S. Department of Agriculture*, 944 F. Supp. 13
    (D.D.C. 1996) ...........................................................................................................14, 15

*U.S. v. Kordel*, 397 U.S. 1 (1970) .......................................................................................9

*Walsh Securities, Inc. v. Cristo Property Management, Ltd.*, 7 F. Supp. 2d
    523
    (D.N.J. 1998)............................................................................................................9

*Warren v. District of Columbia*, 359 U.S. App. D.C., 353 F.3d 36
    (D.C. Cir. 2004) ...........................................................................................................18

## STATUTES AND RULES

### SECURITIES EXCHANGE ACT OF 1934

Section 13(a), [15 U.S.C. § 78m(a)] ...................................................................................19

Section 20(e), [15 U.S.C. § 78t(e)] .....................................................................................21

Section 27, [15 U.S.C. §78aa]............................................................................................13

### OTHER STATUTES

28 U.S.C. §1404(a) ......................................................................................................4, 14

### FEDERAL RULES OF CIVIL PROCEDURE

Rule 12(b)(6)...................................................................................................................18

Rule 15(a).......................................................................................................................30

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

    v.

GARY G. BELL, et al.,

        Defendants.

Civil Action No.

1:07-cv-00120-CKK

## PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM IN OPPOSITION TO DEFENDANT GARY BELL'S MOTION TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS FOR FAILURE TO STATE A CLAIM

Plaintiff Securities and Exchange Commission ("Commission" or "SEC"), through undersigned counsel, respectfully submits this memorandum in opposition to Defendant Gary G. Bell's ("Bell") motion to stay this action or, in the alternative, to transfer to the District of Maryland or, in the alternative, to dismiss for failure to state a claim.[1] ("Bell's Motion"). For the reasons set forth below, the Court should deny the motion in its entirety. Alternatively, should the Court determine that the Commission's complaint fails in some respect to satisfy applicable pleading standards, Plaintiff respectfully requests that it be allowed an opportunity to submit an amended complaint.

## FACTUAL BACKGROUND

### A. Nature and History of These Proceedings

The Commission's complaint, filed on or about January 18, 2007, alleges that Mr. Bell and the other defendants named in this action aided and abetted violations of the

---

[1] Mr. Bell's Memorandum of Points and Authorities in Support of the Motion to Stay, or in the Alternative to Transfer to the District of Maryland, or in the Alternative to Dismiss for Failure to State a Claim in referred to herein as "Bell Mem."

federal securities laws in connection with a large-scale fraud perpetrated at U.S. Foodservice ('USF'), a wholly-owned subsidiary of Koninklijke Ahold N.V. ("Royal Ahold" or "Ahold"). Ahold is a publicly-held company organized in the Netherlands with securities registered with the SEC pursuant to Section 12(b) of the Securities Exchange Act of 1934 ("Exchange Act").

During the relevant period, USF's operating income and profit depended on vendor payments, commonly referred to as "promotional allowances" or "PAs." The complaint alleges that USF executives engaged in a scheme that materially inflated the amount of promotional allowances recorded by USF and reflected in operating income on USF's financial statements, which were included in Ahold's Commission filings and other public statements. The complaint further asserts that defendants aided and abetted the fraud by signing and returning audit confirmation letters that they knew, or were reckless in not knowing, were materially false.[2]

This case is the latest of a series of civil enforcement actions the Commission has filed in this Court against personnel at vendors of USF to address similar conduct. On or about January 13, 2005, the Commission filed nine separate complaints seeking injunctive and other relief against persons who were employees of or agents for vendors that supplied USF, alleging that those defendants knowingly or recklessly signed false audit confirmation letters in connection with the 2001 and 2002 audits of USF.[3]    That

---

[2]    In addition to Mr. Bell, the other named defendants are Joseph Grendys, Anthony Holohan and Michael Smith. Mr. Grendys moved separately to dismiss the Commission's complaint; Mr. Holohan has filed an answer and Mr. Smith has consented to entry of judgment against him. The Commission will file a separate response to Mr. Grendys's motion.

[3]    See SEC v. Bailin, C.A. No. 05-CV-0053, SEC v. Bowman, C.A. No. 05-CV-0054; SEC v. Daly, C.A. No. 05-CV-0055; SEC v. Hannigan, C.A. No. 05-CV-0056; SEC v. Marion, C.A. No. 05-CV-0057; SEC v. Nettle, C.A. No. 05-CV-0058; SEC v. Redgate, C.A. No. 05-Cv-0059; SEC v. Robinson, C.A. No. 05-CV-0060; and SEC v. Rogers, C.A. No. 0061. All of these matters, except Daly, were resolved shortly after

same day, the United States Attorney for the Southern District of New York announced the filing of criminal charges against those nine individuals, based upon the same alleged conduct underlying the Commission's claims.[4]

Thereafter, on or about November 2, 2005, the Commission filed seven additional separate complaints against other current or former employees of or agents for vendors that supplied USF, also alleging that those persons knowingly or recklessly signed false audit confirmation letters in connection with the 2001 and 2002 audits of USF.[5]  That same day, the United States Attorney for the Southern District of New York announced the filing of criminal charges against those seven individuals, predicated upon the same alleged conduct upon which the Commission's claims was based.[6]  There has been no criminal charges filed against any other agents or vendors that supplied USF since these charges were filed in November 2005.

Earlier, on or about July 27, 2004, the Commission filed civil enforcement actions (the "Resnick Action") in the United States District Court for the Southern District of New York against four individuals, Michael Resnick, Mark P. Kaiser, Timothy Lee and William Carter who, during the relevant period, were top executives at USF.[7]  The

---

filing through entry of consent judgments.  After this Court denied his motion for a transfer of venue (see Memorandum Opinion dated February11, 2006), Daly likewise consented to entry of a judgment resolving the issue of liability and reserving  the question of whether the Court should impose a civil monetary penalty and, if so, in what amount.

[4] *See* Department of Justice Press Release, dated January 13, 2005, Exhibit B to Bell's Request for Judicial Notice ("Bell's Request"), submitted in support of the instant motion.

[5] *See SEC v. Crowley*, C.A. No. 05-CV-2133; *SEC v. Henuset*, C.A. No. 05-CV-2135; *SEC v. Langfield*, C.A.No. 05-CV-2136; *SEC v. Lysiak*, C.A.No. 05-CV-2137; *SEC v. Rosenberg*, C.A. No. 05-2139; *SEC v. Schultz*, C.A. No. 05-CV-2140, and *SEC v. Stone*, C.A. No. 05-Cv-2141.  All of these cases have been resolved through entry of consent judgments.

[6] *See* Department of Justice Press Release dated November 2, 2005, Exhibit C to Bell's Request.

[7] *See* Exhibits F and G to Bell's Request.

Commission's complaint asserted that these individuals either engaged in or substantially participated in a scheme to overstate Ahold's income in Commission's filings and other public announcements for at least the fiscal years 2001 and 2002.[8] Also in July 2004, the United States Attorney for the Southern District of New York announced criminal charges against these same four former USF executives. Lee, Carter and Resnick all pleaded guilty to certain of the charges against them.[9] After trial, Kaiser was found guilty and on May 17, 2007, Kaiser was sentenced to 84 months imprisonment, followed by two years of probation and a fine of $50,000. At the request of the United States Attorney's Office, the Resnick Action was stayed pending resolution of the parallel criminal case against these defendants.

By the instant motion, Mr. Bell, asserting that he currently faces a "tangible and real" (Bell Mem. at 1) threat of criminal prosecution for the same conduct that underlies the Commission's claims here, asks this Court to stay this case as to him until either the parallel criminal investigation is concluded or the statute of limitations applicable to any potential criminal charges has expired. Alternatively, Mr. Bell seeks to have the matter transferred to the District of Maryland, pursuant to 28 U.S.C. § 1404(a), or to have the Commission's complaint dismissed, pursuant to Federal Rule of Civil Procedure 129b)(6), for failure to state a claim. As we show below, Mr. Bell's motion should be denied in its entirety.

---

[8] This action was subsequently transferred to the District of Maryland.

[9] Lee and Carter also consented to entry of judgments to resolve the Commission's claims against them.

4

### B. The Specific Allegations of the Commission's Complaint

Fairly construed, the Commission's complaint makes, among others, the following factual allegations:

Ahold is a publicly-held company organized in The Netherlands with securities registered with the SEC pursuant to Section 12(b) of the Securities Exchange Act of 1934 ("Exchange Act"). Ahold's securities trade on the New York Stock Exchange and are evidenced by American Depositary Receipts. Complaint ¶ 5.

During the relevant period, Mr. Bell was Vice President for Business Development at Hunt-Wesson Foodservice ("Hunt-Wesson") and, in that capacity, arranged for the sale of product to USF. Mr. Bell resides in California. Complaint ¶ 14.

On or about October 17, 2003, Ahold filed as Form 20-F for the fiscal year ended December 29, 2002. Ahold's Form 20-F contained restatements for the fiscal years 2000 and 2001, corrected accounting adjustments for fiscal year 2002, and restated amounts for fiscal years 1998 and 1999 included in the five-year summary data. The restatements indicate that, in its original SEC filings and other public statements, Ahold had overstated: (a) net income by approximately 17.6%, 32.6%, and 88.1% for the fiscal years 2000, 2001 and first three quarters of 2002, respectively; (b) operating income by approximately 28.1%, 29.4%, and 51.3% for the fiscal years 2000, 2001 and first three quarters of 2002, respectively; and (c) net sales by approximately 20.8%, 18.6%, and 13.8% for the fiscal years 2000, 2001 and 2002, respectively. As a consequence, Ahold's SEC filings and other public statements for fiscal years 2000 and 2001 and the first three quarters of 2002 contained materially false and misleading statements. Complaint ¶ 6.

5

To a significant degree, the material misstatements in Ahold's public filings resulted from a large-scale fraud at Ahold's subsidiary, USF, a foodservice and distribution company with headquarters in Columbia, Maryland. Complaint ¶ 7. During the relevant period, USF executives engaged in a scheme that materially inflated the amount of promotional allowances recorded by USF and reflected in operating income on USF's financial statements, which were included in Ahold's Commission filings and other public statements. Complaint ¶ 9.

The primary method USF executives used to carry out this fraudulent scheme was to improperly inflate USF's promotional allowance income and record completely fictitious promotional allowances sufficient to cover any shortfall from budgeted earnings. Complaint ¶ 18. The overstated promotional allowances aggregated at least $700 million for fiscal years 2001 and 2002 and caused Ahold to report materially false operating and net income for those and other periods. Complaint ¶ 11.

USF executives also provided their independent auditors with false and misleading information and personnel at many of USF's major vendors falsely confirmed overstated promotional allowances to the auditors in connection with year-end audits. In an attempt to keep the fraud from being discovered, USF convinced representatives of USF vendors, like Mr. Bell, to sign and return audit confirmation letters even though the vendors knew, or were reckless in not knowing, that the letters were false. Complaint ¶ 19. In this way, Mr. Bell and the other vendor representatives named in the Commission's complaint, among others, provided substantial assistance to the USF executives directly responsible for the fraud by signing material false audit confirmation letters. Complaint ¶ 10.

6

Specifically, for the audit of the fiscal year ending December 29, 2001, Mr. Bell received a confirmation letter dated January 23, 2002 from USF. It stated, in part:

> In connection with the audit of our financial statements of U.S. Foodservice, Inc. (USF) for the year ended December 29, 2001, please confirm directly with our auditors, Deloitte & Touche, LLP, 100 South Charles Street 12th Floor, Baltimore, Maryland 21201, the following with respect to Marketing and Merchandising Allowances offered by you to U.S. Foodservice as of December 29, 2001:

| | |
|---|---|
| Balance due to USF at December 30, 2000: | $ 1,528,000 |
| Less: Payments/Deductions made/allowed during 2001 | (2,956,590) |
| Plus: Allowances earned during 2001 | 5,903,749 |
| Ending Balance due to USF at December 29, 2001 | $4,475,159 |

Mr. Bell signed the letter without noting any exceptions and then, on or about February 6, 2002, returned the letter to USF's independent auditors. Complaint ¶ 24. When Mr. Bell signed and returned the audit confirmation letter, he knew, or was reckless in not knowing, that it contained material misstatements, including, but not limited to: (a) the amounts reflected as "Ending Balance due to USF at December 29, 2001" and "Allowances earned during 2001;" (Complaint ¶ 25); and (b) the representation that USF had purchased volume totaling $49,000,000 under the base corporate program with Hunt Wesson (Complaint ¶ 26).

Shortly before Mr. Bell sent the false 2001 audit confirmation letter to USF's independent auditor, on or about February 6, 2002, he drafted a side letter dated February 5, 2002. The side letter was signed by Bell and countersigned at Bell's request by USF. Complaint ¶ 28.

The side letter that Mr. Bell signed stated that his employer, Hunt-Wesson, did not agree with the January 23, 2002 letter from USF. Mr. Bell's side letter listed specific

7

"areas of concern" with several amounts contained in the audit confirmation letter, including the annual purchase volume, the percentages and amounts paid under the corporate program, and the amounts purportedly due to USF on December 29, 2001 and December 30, 2000. In the side letter, Mr. Bell stated that the actual purchase volume was $42,125,000, and that Hunt-Wesson did not have an outstanding balance due to USF as of December 29, 2001 and December 30, 2000. All of these items contradicted the information Mr. Bell confirmed to USF's independent auditors. Complaint ¶ 29.

Mr. Bell was aware of several "red flags" or suspicious events, including without limitation that USF management explicitly encouraged him to sign and send to USF's independent auditors an audit confirmation letter that Mr. Bell knew, or was reckless in not knowing, was (1) materially false, and (2) would misstate USF's books and records and mislead USF's independent auditors. Complaint ¶ 32.

**ARGUMENT**

## I.    THE COURT SHOULD NOT STAY THIS ACTION.

It is well-settled that a stay of civil proceedings pending the resolution of a parallel criminal case is not mandatory. See *SEC v. Dresser Indus., Inc.*, 628 F. 2d 1368, 1375 (D.C. Cir. 1980)(en banc); *Estate of Gaither*, 2005 U.S. Dist. LEXIS 35426 (D.D.C. Dec. 5, 2005); *Barry Farm Resident Council v. U.S. Dep't of the Navy*, 1997 U.S. Dist. LEXIS 2754 (D.D.C. Feb.18, 1997) ("Nothing in the Constitution or laws requires a stay of civil proceedings pending the outcome of parallel criminal proceedings."). A district court may, however, as an exercise of its discretion, "stay civil proceedings, postpone civil discovery or impose protective orders and conditions when the interests of justice

seem to require such action." *Dresser Indus.*, 628 F.2d at 1375; see *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970). As the D.C. Circuit noted in *Dresser*:

> The civil and regulatory laws of the United States frequently overlap with the criminal laws, creating the possibility of parallel civil and criminal proceedings, either successive or simultaneous. In the absence of substantial prejudice to the rights of the parties involved, such parallel proceedings are unobjectionable under our jurisprudence.

628 F.2d at 1374.    As this Court recognized in *Gaither*, the need for a stay is a "far weaker one" prior to the issuance of an indictment. *Federal Sav. & Loan Ins., Corp. v. Molinaro*, 889 F.2d 899, 903, (9th Cir. 1989) (*quoting Dresser Indus.*, 628 F.2d at 1376).

In determining whether a discretionary stay is warranted, courts in this jurisdiction generally seek to balance the following relevant factors: (1) the interest of the plaintiff in having the civil litigation proceed as compared to the prejudice plaintiff might suffer by delaying the civil matter; (2) the public interest in the pending civil and criminal litigation or investigation; (3) the interests of the defendant; (4) the interests of third parties; and (5) the convenience of the court and the efficient use of judicial resources.[10] See Gaither, 2005 U.S. Dist. LEXIS 35426 at *8; *Barry Farm Resident Council*, 1997 U. S. Dist LEXIS at *9. The Court must make it determination "in light of the particular circumstances" of the case before it. *Dresser Indus.*, 628 F.2d at 1375. Application of these factors to the circumstances presented by this case demonstrates that a stay is unwarranted.

---

[10]   Not surprisingly, Mr. Bell cites (Mem. at pp. 10-12) a number of decisions from other jurisdictions in which courts have emphasized other factors, such as the similarity of the issues presented in the parallel criminal and civil actions or the status of the criminal proceeding at the time the stay request is presented, to suggest that application of those factors here warrants a stay of this case. See e.g., *Brock v. Tolkow*, 109 F.R.D. 116 (E.D.N.Y. 1985); *Walsh Securities, Inc. v. Cristo Property Mgmt.*, 7 F. Supp. 2d 523 (D.N.J. 1998). Those decisions, of course, are not controlling in this jurisdiction.

The Commission, as the federal regulatory agency charged with the task of protecting the nation's capital markets, has a compelling interest in the prompt and efficient resolution of civil enforcement proceedings it brings to address violations of the securities laws. As the Court observed in *Dresser*, "[e]ffective enforcement of the securities laws requires that the SEC and Justice be able to investigate [and pursue] possible violations simultaneously....[t]he SEC cannot always wait for Justice to complete the criminal proceedings if it is to obtain the necessary prompt civil remedy." 628 F.2d at 1377. If the case is delayed, witnesses may be come unavailable in the interim, memories may fade and enforcement resources may be diverted. The Commission's need for a prompt resolution of its claims against Bell militates against the imposition of a stay.

Mr. Bell's principal argument in support of his request for a stay is his assertion that he will be substantially prejudiced if this case proceeds before his potential criminal exposure is resolved (Bell Mem. at pp. 14-16). Mr. Bell contends that, although he has not been indicted for any conduct pertaining to USF, he remains a present target of the criminal investigation. Thus, Defendant contends that unless a stay is granted he will be forced to "choose between defending himself in this case or saving his best defense for the potential criminal case." *Id.* at p. 14. Mr. Bell, however, substantially overstates the potential prejudice he will face in the absence of a stay.

As this Court has observed, the case for staying civil proceedings "is far weaker" prior to the issuance of an indictment in the related criminal matter. *Gaither*, 2005 U.S. LEXIS, at *8. Although the Commission and the United States Attorney's Office have acted in concert in simultaneously bringing civil and criminal charges against 16 other

employees or agents of USF vendors for substantially similar conduct, a period of some 18 months has elapsed since the last indictments were announced in November 2005. Moreover, in a marked departure from past practice, the Commission did not act jointly with the Justice Department when it filed claims against Mr. Bell and the three other defendants named in this action.[11] Additionally, in contrast to the position it has taken regarding the Resnick Action, which also stems from the fraud at USF, the United States Attorney's Office has not asked this Court to stay this case in deference to actual or potential criminal proceedings.[12]

While the Commission does not dispute Defendant's assertion that he has been informed that he is a potential target for criminal prosecution, the overall circumstances do not, as Mr. Bell suggests, give rise to a strong inference that an indictment against him is looming and therefore a stay of this action is needed. Other, less drastic means, such as protective orders or other limitations on discovery should suffice adequately to shield Mr. Bell from having to make a Hobson's choice he purportedly fears, should subsequent events cause Mr. Bell to confront such a dilemma.

The public interest, the third factor the Court must consider, also favors denial of Bell's request for a stay. As discussed above, the public interest would be furthered by an expeditious resolution of this civil action to address violations of the federal securities laws. Moreover, because Mr. Bell has not been indicted there is less of a possibility that

---

[11] It should also be noted that neither Holohan nor Grendys, the other remaining defendants in this case, and who presumably might share Bell's concern regarding potential criminal charges being brought against them for their conduct relating to USF, has requested a stay. Grendys moved to dismiss the Commission's complaint on other grounds; Holohan filed an answer.

[12] On February 16, 2006, the SEC filed an administrative proceeding against two KPMG partners that audited USF. *See In the Matter of Kevin M. Hall, CPA, and Rosemary K. Meyer, CPA*, SEC AP File No. 3-12208. Consistent with their motion to stay in the Resnick Action, on April 14, 2006, the United States Attorney's Office intervened and moved to stay that administrative proceeding.

allowing this matter to proceed could adversely impact the criminal investigation to any significant degree. If the Court denies Mr. Bell's motion for a stay, the likelihood that discovery here will either: (1) reveal confidential sources; (2) endanger witnesses; or (3) aid criminal defendants by providing them with access to discovery to which they would not be able to obtain otherwise simply is not that great. *Compare Gaither*, 2005 U.S. LEXIS, at *13 (holding that public interest considerations favored a stay because allowing civil discovery might, among other things, reveal confidential sources, endanger witnesses, divert the attention of the prosecutors, and provide indicted criminal defendants with broader discovery than would otherwise be available to such defendants).

In this case, the interests of persons not parties to this litigation, another factor Courts consider is assessing the appropriateness of a stay, is the same as the public interest in that there are no specific third parties who would be otherwise affected. As discussed above, the public interest militates against a stay.

Finally, at this juncture a stay of this action would not promote judicial economy. Mr. Bell suggests in the absence of a stay, he would be forced to assert his privilege against self-incrimination frequently and that such invocation could lead to "onerous motion practice" (Bell Mem. at p. 17) if the Commission chooses to challenge his invocation at various stages of pretrial proceedings. At this early stage, however, Mr. Bell's arguments regarding the potential scope of likely motions practice is pure speculation. Discovery disputes are inevitable in civil litigation and, apart from rank conjecture, nothing here supports a conclusion that such disputes would be substantially increased in the absence of a stay pending the resolution of possible criminal charges against Mr. Bell.

12

## II.    THE COURT SHOULD NOT TRANSFER THIS ACTION.

Section 27 of the Exchange Act provides, in pertinent part, that venue is proper in any forum "wherein any act or transaction constituting the violation occurred" as well as "in any district wherein the defendant is found or is an inhabitant." 15 U.S.C. § 78aa. "As the courts interpret this provision, 'any non-trivial act in the forum district which helps to accomplish a securities law violation is sufficient to establish venue.'" *Greenwood Partners v. New Frontier Media Inc.*, No. 99 CIV. 9099 WK, 2000 WL 278086, at *6 (S.D.N.Y. Mar. 14, 2000) (quoting *Steinberg & Lyman v. Takacs*, 690 F. Supp. 263, 267 (S.D.N.Y. 1988)).

Courts in this circuit have repeatedly held that venue is proper in this district for enforcement actions brought by the Commission that involve reports required to be filed with the Commission at its offices in the District of Columbia. *Investors Funding Corp. of New York v. Jones*, 161 U.S. App. D.C. 420, 495 F.2d 1000, 1003 (D.C. Cir. 1974) ("We hold that venue for civil enforcement actions of the Commission, involving reports to be filed in the District of Columbia, is here."); *SEC v. Savoy Indus., Inc.*, 190 U.S. App. D.C. 252, 587 F. 2d 1149, 1154 (D.C. Cir. 1978)(involving three filings under the Exchange Act); *SEC v. Wallace*, 94 F. Supp. 2d 1 (D.D.C. 2000)(involving fraudulent scheme to sell unregistered securities and failure to register with the Commission as investment advisors). Here, the Commission's claims against Mr. Bell are predicated upon his knowingly having provided substantial assistance to USF executives in connection with a scheme to report earnings equal to or greater than its target, regardless of the company's true targets. The Commission's complaint plainly alleges that certain transactions, acts, practices and course of business that are the subject of this action,

13

including Ahold's filing of materially false and misleading statements with the SEC located in the District of Columbia, took place in this district. Under these circumstances, venue is proper in this district.

Apparently acknowledging that venue is proper in this district, Mr. Bell argues instead that, pursuant to 28 U.S.C. §1404(a), the matter should be transferred to the District of Maryland as a matter of convenience. As relevant here, Section 1404(a) provides that a court may transfer any civil action to any other district or division where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."[13]    It is well-established, however, that the plaintiff's choice of forum is "a paramount consideration" in determining a request for transfer under Section 1404(a). *Sheraton Operating Corp. v. Just Corporate Travel*, 984 F. Supp. 22, 25 (D.D.C. 1997); *see also Gross v. Owen*, 95 U. S. App. D.C. 222, 221 F. 2d 94, 95 (D.C. Cir. 1955)("It is almost a truism that a plaintiff's choice of forum will rarely be disturbed…unless the balance of convenience is strongly in favor of the defendant.") In this case, Mr. Bell cannot sustain his heavy burden of establishing that plaintiff's choice of forum is inappropriate. S*ee Thayer/Patricof Education Funding, L.L.C. v. Pryor Resources, Inc.,* 196 F. Supp. 2d 21 (D.D.C. 2002); *Trout Unlimited v. U.S. Dept. of Agriculture*, 944 F. Supp. 13 (D.D.C. 1996). Rather, convenience considerations tip decidedly in the Commission's favor and, accordingly, this Court should continue to exercise jurisdiction over this case.

In assessing transfer requests under Section 1404(a), courts look to balance a number of factors that embody both private and public interests. *Trout Unlimited,* 944 F.

---

[13] Plaintiff acknowledges that venue would also be proper in the District of Maryland. Such a showing is a necessary prerequisite for transfer under Section 1404(a).

Supp. at 17.   The private interest factors include: (a) the plaintiff's choice of forum; (b) the defendant's choice of forum; (c) whether the claim arose elsewhere; (d) the convenience of the parties; (e) the convenience of the witnesses of the plaintiff and defendant, to the extent that such witnesses may actually be unavailable for trial in one of the fora; and (e) the ease of access to sources of proof.  Id.   The public interest factors courts look to are: (a) whether the transferee court is familiar with the governing laws; (b) the relative congestion of the potential transferee and transferor courts; and (c) the local interest in deciding local controversies at home.  *See Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 71 (D.D.C. 1998); *Trout Unlimited*, 944 F. Supp. at 16.

Applying these factors in *SEC v. Daly*, C. A. No. 05-CV-0055(CKK)(D.D.C. Memorandum Opinion filed February 11, 2006), a factually related Commission action against another USF vendor for aiding and abetting Ahold's securities violations, this Court denied a similar motion to transfer venue on convenience grounds. **[Cite]** There, the defendant, a Texas resident, sought transfer to the Southern District of Texas, among other things, asserting, with little supporting documentation, that he could more readily obtain legal counsel in his home district at little or no cost and that it would be substantially more difficult for him to defend the action far from home. In denying Daly's motion, the Court concluded that it "should give substantial deference to Plaintiff's chosen forum" and that a court should not transfer a case simply "to shift inconvenience from the defendant to the plaintiff." *Daly*, Mem. Op. at 8.  Rather, transfer is only appropriate "when the net convenience would increase." Id. Finding that the defendant had failed to carry his burden of showing that application of the private and public

15

interest factors warranted transfer under Section 1404(a), this Court denied the motion. *Daly*, Mem. Op. at 11. The same conclusion is appropriate here.

First, plainly, this forum is more convenient to the plaintiff. It has offices located in the District of Columbia and the staff responsible for this litigation work out of those offices[14]. Moreover, this case is but one of a number of Commission enforcement actions against USF's vendors for aiding and abetting Ahold's fraudulent scheme, all of which have been filed in this District and assigned to the docket of this Court as related cases. By contrast, the Complaint alleges that Mr. Bell is a resident of California. Complaint at ¶ 14. Thus a transfer of this case to the District of Maryland would not materially reduce the inconvenience to Mr. Bell in defending against the Commission's claims.

Second, Mr. Bell's assertions to the contrary notwithstanding, the claims at issue here are based in large part upon certain acts and transactions that occurred in this district, namely, Ahold's filing of materially false and misleading statements with the SEC in the District of Columbia that included materially false financial information regarding USF, its wholly-owned subsidiary. See Part III, below. This Court so concluded in denying the earlier motion to transfer in *Daly* ("Defendant's argument that 'no part of the case transpired in Washington, D.C.' is incorrect as a matter of law, in light of the fact that SEC filings based on Defendant's alleged misrepresentations were made in the District of Columbia."). *Daly*, Mem. Op. at 8

Third, most of the witnesses whose testimony will be necessary to support plaintiff's claims can be found in or near this jurisdiction. USF, the Ahold subsidiary

---

[14]    Although the Commission recognizes that "it is not always appropriate to equate the convenience of the SEC as an institution with the location of its lawyers," SEC v. Ernst & Young, 775 F. Supp. 411, 415 (D.D.C. 1991), Plaintiff submits that the location of its counsel is relevant here because Mr. Bell likewise is not a resident of the district to which he proposes the matter be transferred.

through which the fraudulent scheme to inflate company earnings was largely perpetuated, is headquartered in nearby Columbia, Maryland. Its independent auditors to whom Defendant and others provided false confirmation letters are located in Baltimore, Maryland. Because both USF and its independent auditors, whose current or former personnel are most likely to possess majority of information relevant to the issues presented, can be found in close proximity to the district, the ease of access to sources of proof here would not be substantially increased by transferring the case to the District of Maryland.

The public interest considerations likewise weigh heavily against a transfer. This case raises only issues of federal securities law and Mr. Bell can point to nothing that suggests that the potential transferee court would be substantially more familiar with applicable laws than this Court. In fact the opposite is true. This matter is but one of a number of related cases filed by the Commission over the past two years that raise virtually identical claims against a number of USF vendors, who, like Mr. Bell, substantially assisted USF's fraudulent scheme by submitting false confirmation letters to the company's auditors. Unquestionably, it will be far more efficient to have all such claims considered by the same court.[15]

Second, Mr. Bell has made no showing that the potential transferee court is any less congested than this one and thus could dispose of the case any sooner. Finally, while the local interest in this controversy might be slightly greater in the District of Maryland, where USF and its auditors are located, that potentially increased local interest does not

---

[15]  Although all the related cases have now been resolved, this Court is now quite familiar with the issues presented. By contrast, the Resnick Action currently pending in the District of Maryland, although arising from the same fraudulent conduct, does not involve claims against USF vendors who aided and abetted the fraud by submitting false audit confirmation letters.

warrant a transfer or the case at this juncture, in light of the other factors that support this Court's continuing to exercise jurisdiction.

### III.    THE COMPLAINT SHOULD NOT BE DISMISSED.

#### 1. The Applicable Legal Standards Under Rule 12(b)(6).

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the challenged complaint must be construed in the light most favorable to the non-moving party, and all facts alleged must be accepted as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004). Additionally, the non-moving party is entitled to have all inferences from the facts alleged drawn in its favor. *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996), *citing, Kowal v. MCI Comm. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); see also *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (the complaint must be construed so as to favor the non-moving party). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Commission's "complaint must be sustained if relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *National Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994). The complaint here, under these liberal pleading standards, has alleged more than enough to withstand Mr. Bell's motion to dismiss.

**2. The Complaint Adequately Alleges Claims for Aiding and Abetting Ahold's Violations of the Exchange Act's Reporting and Books and Records Provisions.**

Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), requires issuers to file such periodic and other reports as the Commission may prescribe and in conformity with such rules as the Commission may promulgate. Pursuant to Section 13(a), the Commission has promulgated Rules 13a-1 and 13a-16, which require foreign issuers to file annual and other reports, respectively. The obligation to file such reports embodies the requirement that they be true and correct. SEC v. Savoy Indus., Inc., 587 F.2d at 1165.

Section 13(b)(2)(A) of the Exchange Act requires Section 12 registrants to make and keep books, records, and accounts that accurately and fairly reflect the transactions and dispositions of their assets. Section 13(b)(2)(B) requires issuers to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles and to maintain the accountability of assets. Section 13(b)(5) provides that no person shall knowingly falsify any book, record, or account or circumvent internal controls. Rule 13b2-1 prohibits the direct or indirect falsification, or causing to be falsified, of any book, record or account that issuers are required to maintain pursuant to the Exchange Act.

Thus, Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) speak of the obligations of 'issuers.' In Counts 2 and 3 of its Complaint, the Commission alleges that Mr. Bell is liable for aiding and abetting violations of the reporting and recordkeeping provisions. Mr. Bell contends that the Commission's allegations are insufficient as a matter of law

19

because the complaint fails adequately to allege a primary violation of these provisions by an issuer of securities. MR. Bell's contention is without merit.

The complaint alleges that "Ahold is a publicly-held company organized in The Netherlands with securities registered with the SEC pursuant to Section 12(b) of the Securities Exchange Act." Complaint ¶ 5. The complaint goes on to allege that Ahold's securities are evidenced by American Depositary Receipts, and that those ADRs trade on the New York Stock Exchange.

The complaint also alleges that "Ahold made materially false and misleading statements in SEC filings ... for at least fiscal years 2000 and 2001, as well as for the first three quarters of 2002." Complaint ¶ 6. It also states that Ahold restated its results in those periods when it filed its Form 20-F on or about October 17, 2003. *Id.*

Finally, the complaint asserts that USF was a wholly-owned subsidiary of Ahold. Complaint ¶ 1. It also states that one reason for the misstatements restated by USF on or about October 17, 2003 was a large-scale fraud at Ahold's subsidiary, USF. Complaint ¶ 7. The complaint then makes the logical connection that Mr. Bell avoids: "USF executives engaged in a scheme that materially inflated the amount of promotional allowances recorded by USF and reflected in operating income on USF's financial statements, which were included in Ahold's Commission filings and other public statements." Complaint ¶ 9. "The overstated promotional allowances aggregated at least $700 million for fiscal years 2001 and 2002 and caused Ahold to report materially false operating and net income for those and other periods." Complaint ¶ 11.

These allegations are sufficient to assert a primary violation by an issuer of securities.

### 3. The Complaint Properly Pleads Aiding and Abetting against Bell.

Section 20(e) of the Exchange Act, 15 U.S. C. § 78t(e), imposes liability upon persons who aid and abet primary violations of the securities laws: "[A]ny person that knowingly provides substantial assistance to another person in violation of a provision of this title, or of any rule or regulation issued under this title, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided." 15 U.S.C. § 78t(e).

To establish a defendant's liability for aiding and abetting liability under Section 20(e) in this Circuit must show that:

1) Another party has committed a securities law violation;

2) The defendant accused of aiding and abetting had a general awareness that his role was part of an overall activity that was improper; and

3) The defendant accused of aiding and abetting knowingly and substantially assisted the principal violation.

*Investors Research Corp. v. SEC*, 628 F.2d 168, 178 (D.C. Cir.), *cert. den.*, 101 S.Ct. 317 (1980). The Commission's Complaint has sufficiently pleaded each of these elements with respect to Mr. Bell.

### A.    Primary Violation

By alleging that "USF executives engaged in a scheme that materially inflated the amount of promotional allowances recorded by USF and reflected in operating income on USF's financial statements, which were included in Ahold's Commission filings and other public statements," the complaint satisfies the first element. Complaint ¶ 9. It is further supported by the allegation that "overstated promotional allowances aggregated at

21

least $700 million for fiscal years 2001 and 2002 and <u>caused Ahold to report materially</u> <u>false operating and net income</u> for those and other periods." Complaint ¶ 11 (emphasis added).

These allegations satisfy the primary violation requirement for the statutory sections that Bell is alleged to have aided and abetted: Sections 10(b), 13(a), 13(b)(2)(A), 13(b)(2)(B), and 13(b)(5) of the Exchange Act and Exchange Act Rules 10b-5 and 13b2-1.[16] These and related allegations in the complaint establish fraud, reporting and record-keeping violations.[17]

### B.    General Awareness of Role in Improper Conduct

The second element that must be established to impose aiding and abetting liability is a showing that the defendant had a "general awareness that his role was part of an overall activity that was improper." *Investors Research Corp.*, 628 F.2d at 178. This can be established through a showing that the defendant acted with "extreme recklessness." In *Howard v. SEC*, 376 F.3d 1136, 1143 (D.C. Cir. 2004), this Circuit held that:

> "Extreme recklessness" - or as many courts of appeals put it, "severe recklessness" - may be found if the alleged aider and abettor encountered "red flags," or "suspicious events creating reasons for doubt" that should have alerted him to the improper conduct of the primary violator, . . . or if there was "a danger ... so obvious that the actor must have been aware of" the danger.

376 F.3d at 1143 (citations omitted).

---

[16] No showing of scienter is necessary to establish a violation of Section 13(b)(2)(A) or 13(b)(2)(B) of the Exchange Act. *SEC v. McNulty*, 137 F.3d 732, 740-41 (2d Cir. 1998); *In re KPMG LLP*, Exch. Act. Rel. No. 51574, 2005 SEC LEXIS 867 (April 19, 2005).

[17] Defendant Bell asserts in his Motion that his acts were not 'in connection with' the purchase or sale of securities. See Bell Motion at 31-2. The relationship between Ahold, which has securities registered with the SEC and trades on the NYSE as ADRs, and USF, which is a wholly owned subsidiary of Ahold (Complaint ¶¶ 1, 5, 18), is described. The effect that the misstatements in USF's financial statements had on Ahold's Commission fillings and its public statements is also described (Complaint ¶9).

The Commission's complaint also adequately alleges this element as to Mr. Bell. The Complaint asserts that USF sent Mr. Bell a letter requesting that "[i]n connection with the audit of our financial statements of U.S. Foodservice, Inc. (USF) for the year ended December 29, 2001" he confirm certain information with Deloitte & Touche, USF's independent auditor. Complaint ¶ 24. The complaint further alleges that Mr. Bell was requested to send the confirmation letter directly to the auditors at their Baltimore, Maryland office and not USF at its Columbia, Maryland headquarters. *Compare* Complaint ¶ 24 ("please confirm directly with our auditors, Deloitte & Touche, LLP, 100 South Charles Street 12th Floor, Baltimore, Maryland 21201,") *with* ¶ 7 ("Ahold's subsidiary, USF, a foodservice and distribution company with headquarters in Columbia, Maryland."). In that confirmation letter, the complaint alleges that Mr. Bell was asked to confirm specific amounts, including "Allowances earned during 2001" and "Ending Balance due to USF at December 29, 2001." Complaint ¶ 24. The complaint further alleges that, on or about February 6, 2002, Bell signed the letter without noting any exception, and returned the letter to USF's independent auditors. *Id.*

The Commission's complaint further alleges that before Mr. Bell sent the false 2001 audit confirmation letter to USF's independent auditor, he drafted a side letter. Complaint ¶ 28. He signed the side letter and had it countersigned, but he did not send it to USF's independent auditors. *Id.* at ¶¶ 28, 31. The Commission alleges that the side letter shows that Bell understood the numbers he confirmed to Deloitte & Touche were not correct. It was only after both USF and Bell signed the side letter – presenting the correct accounts receivable balance and PA income owed by his company to USF – that Bell confirmed the false information to Deloitte & Touche.   These allegations support

23

the inference that Mr. Bell was aware that he was providing false information to USF's auditors.

The complaint goes further and alleges that Mr. Bell encountered "red flags" and other "suspicious events creating reasons for doubt" demonstrating that USF and its management were engaged in misconduct. *See Howard v. SEC*, 376 F.3d 1136, 1143-9 (D.C. Cir. 2004). Based on these allegations, one can reasonably conclude not only that Mr. Bell knew, or was reckless in not knowing, that he was confirming false information to D&T but that Defendant was also aware that USF understood him to be confirming false information to its own auditors. To the extent, as Mr. Bell asserts in his motion to dismiss, Defendant was told by USF management that this audit confirmation letter was only an internal USF matter, that representation expressly conflicted with the audit confirmation letter Bell signed. This is further evidence in Bell's possession at the time he signed the false audit confirmation that USF was engaged in deceit and fraud. *See SEC v. Washington Investment Network*, 475 F.3d 392, 406 (D.C. Cir. Feb. 6, 2007) (aiding and abetting found where defendant knew of bar order and continued involvement of barred co-owner; district court did not need to explicitly find that continued association was improper as it was logical conclusion from known facts).

Given the objective evidence of the "surrounding circumstances and the expectations of the parties" as set forth in the Complaint, it is reasonable to conclude that Mr. Bell was not engaged in "a transaction in the ordinary course of his business." *Compare SEC v. Morris*, 2005 WL 2000665 at * 9 (S.D. Tex. 2005).

Instead, the factual allegations of the Commission's complaint establish that Mr. Bell was aware that USF was falsely presenting its PA income and PA accounts

24

receivable information <u>and</u> lying about it to its auditors. One can also conclude from these factual allegations that Mr. Bell likewise knew, or was reckless in not knowing, that the information he provided USF's auditors was false and that it involved USF's financial statements. *Ponce v. SEC*, 345 F.3d 722, 737 (9th Cir. 2003) (defendant, the issuer's independent auditor, aided and abetted where he "certainly had knowledge, or at least was reckless in not recognizing, the misleading nature of the statements" although he may not have conceived the reports as false or misleading at the time he made them); *SEC v. Apolant*, 411 F. Supp.2d 271, 277 (E.D.N.Y. 2006) (aiding and abetting was properly pled where the complaint alleged the defendant knew what he was representing to the public about the issuer was deceptive despite being literally true).

### C.    Knowingly Provided Substantial Assistance

The final element that the Commission must establish in support of its claims against Mr. Bell is that "accused aider and abettor knowingly and substantially assisted the principal violation." *Investors Research Corp.*, 628 F.2d at 178. The Complaint meets this requirement as well.

The Complaint explains that the primary method to make earnings and other targets at USF was to improperly inflate PA income. (Complaint ¶18). The Commission asserts that Mr. Bell and others like him aided in this process by helping USF hide false PA income from USF's auditors. (Complaint ¶¶ 10, 19). It alleges that Mr. Bell helped keep the fraud from being discovered by confirming false information, including gross inflation of promotional monies earned, paid and receivable, to USF's auditors. (Complaint ¶¶ 19, 20). The complaint alleges that Mr. Bell told D&T that his employer, Hunt-Wesson, owed USF over $4 million at the end of 2001 and approximately $1.5

million at the end of 2000 when in fact Hunt Wesson owed USF nothing. Complaint (¶¶ 24, 29). Bell's provided USF's "independent auditors with false and misleading information" and "falsely confirmed overstated promotional allowances to the auditors in connection with year-end audits." (Complaint ¶ 10).

In *SEC v. Stansbury Holdings Corporation*, 2007 WL 552248 (D. Colo. Feb. 20, 2007), the court held that aiding and abetting was properly pleaded where the complaint stated the defendant knew that key assets were worth much less than reported. In this instance, Mr. Bell knew, or was reckless in not knowing, that key assets of USF – i.e., its PA account receivables balances – were 100% less than he confirmed to USF's outside auditors. In *Apolant*, the complaint was found to have sufficiently alleged the substantial assistance element of an aiding and abetting claim where it stated that the defendant helped conceal the controlling force behind the company. 411 F. Supp.2d at 277. Here, the complaint alleges that Mr. Bell helped conceal the truth about USF's PA income and USF's management's willingness to deceive, and convince others to deceive, their independent auditors about that PA income. *See also SEC v. Intelliquis Intern., Inc.,* 2003 WL 23356426 * 14 (D. Utah 2003) (defendant auditor "provided substantial assistance in the false reporting" by, among other things, doing nothing when a $3 million overstatement in accounts receivables was brought to his attention).

Mr. Bell cites *SEC v. Orr*, 2006 WL 542986 (E.D.Mich. 2006) as a pertinent analogy. That decision warrants discussion here, as the facts in that case are similar to this one. In that case, the court considered the motions to dismiss of three individuals: Orr, Kirkpatrick and Bixler. Orr was an employee of the issuer, Kmart, while Kirkpatrick and Bixler were employees of two vendors that sold products to Kmart. *Orr* at *1. All

three defendants were alleged to have acted in concert with others to "prematurely report[] allowances earned by Kmart under vendor contracts" and that there were "so-called 'secret side agreements' which were not disclosed to Kmart's accounting department or its independent auditors." *Id.* Of the three defendants involved, Mr. Bell has pointed to Bixler, the only of the three defendants against whom aiding and abetting claims were dismissed. *Orr*, 2006 WL 542986 at *12-15.

The court, however, found that the aiding and abetting allegations against Kirkpatrick, the other vendor defendant were sufficient. *Id.* at *12-13. The allegations in the complaint that the court noted included, among others: (1) communications to the defendant from a Kmart executive suggesting an improper purpose for an upcoming transaction; (2) execution by the defendant of the internal Kmart forms that created a false impression about a prepayment; and (3) defendant's falsely confirming the accuracy of those internal forms to Kmart's auditors. *Orr*, 2006 WL 542986 at *12. More significantly, the court held:

> By signing off on the VATS forms, which were inaccurate on their face, and subsequently confirming their validity to Kmart's auditors, reasonable jurors could find that Kirkpatrick acted knowingly and that his actions subsequently assisted the overall scheme.

*Id.* at *12. On the other hand, the complaint merely alleged that Bixler made a prepayment at year-end without any other indication that something improper was happening at Kmart. *See Orr,* 2006 WL 542986 at *13. The court found that, although it was vague, the Kmart form that Bixler completed was not false on its face and the

27

complaint's allegation that Bixler lied to Kmart's auditors was conclusory in nature. *Id.* at *13.[18]

### 4. The Complaint Sufficiently Alleges that the Misrepresentations Were Material.

Mr. Bell contends that the Court should dismiss the complaint because, as a matter of law, the amounts in the confirmation letter do not, in themselves, constitute material amounts with respect to Ahold's financial statements that were included in its Commission filings and other public statements. Defendant's contentions in this regard are unavailing..

First, materiality is an issue unsuited to a motion to dismiss. *See Ganino v. Citizens Utilities Company*, 228 F.3d 154, 162-64 (2d Cir. 2000); *see also TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) (materiality is a mixed question of law and fact). It is particularly inappropriate in the context of evaluating whether a vendor's false representations to auditors and other acts constitute aiding and abetting an accounting fraud. *See SEC v. Orr*, 2006 WL 542986 at *12. At the pleading stage, a plaintiff satisfies the materiality requirement of Rule 10b-5 by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions. *See Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988).

Moreover, the complaint does allege that "overstated promotional allowances aggregated at least $700 million for fiscal years 2001 and 2002 and caused Ahold to report materially false operating and net income for those and other periods." Complaint ¶ 11. The complaint also alleges that, to correct for its financial irregularities, Ahold had

---

[18] Moreover, the court found that the complaint properly alleged that aiding and abetting against Orr, the Kmart executive, with regard to two of four transactions specified in the complaint. *SEC v. Orr*, 2006 WL 542986 at *14. For the two dismissed transactions, there were no allegations linking Orr to them. For the other two, however, the complaint alleged direct involvement and intentional misrepresentations by Orr.

to restate its net income by over 32% and its operating income by over 29%. Complaint ¶ 6. These are the primary violations that the Commission alleges Mr. Bell aided and abetted; by helping USF deceive its independent auditors, Bell aided and abetted the entire fraud at USF, not merely the amounts directly attributable to the false audit confirmation he signed.

Finally, the complaint alleges that Mr. Bell was one of many vendors who aided and abetted the fraud at USF by sending false audit confirmation letters to USF's auditors. While only four were named as defendants in this action, overall, the Commission has asserted claims against at least 25 separate vendors who signed and sent false audit confirmation letters to USF's independent auditors. *See supra.* Additionally, the Complaint states:

> Personnel at many of USF's major vendors falsely confirmed overstated promotional allowances to the auditors in connection with year-end audits. Bell, Grendys, Holohan, and Smith provided substantial assistance in this process by signing material false audit confirmation letters.

Complaint ¶ 10. These false statements, considered cumulatively, satisfy the materiality requirement even if the individual amounts involved are relatively small. *Compare SEC v. Cohen*, 2006 WL 2225410 (E.D. Mo. Aug. 2, 2006).

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Mr. Bell's motion in its entirety.  Alternatively, should the Court determine that the Commission's complaint fails in some respect to satisfy applicable pleading standards, Plaintiff respectfully requests that it be allowed an opportunity to submit an amended complaint. See Fed. R. Civ. P 15(a)(Leave to amend "shall be freely given when justice so requires").

Dated:   May 21, 2007

Respectfully submitted,

_____/s/_____
Charles D. Stodghill (DC Bar No. 256792)
Matthew B. Greiner (DC Bar No. 448480)
Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street N.E.
Washington, DC 20549
Telephone:  (202) 551-4413 (Stodghill)
Facsimile:  (202) 772-9246 (Stodghill)