UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

GARY G. BELL, et al.,

Defendants.

Civil Action No.

1:07-cv-00120-CKK

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM IN OPPOSITION TO JOSEPH GRENDYS'
MOTION TO DISMISS**

Charles D. Stodghill (DC Bar No. 256792)
Matthew B. Greiner (DC Bar No. 448480)
Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street N.E.
Washington, DC 20549
Telephone: (202) 551-4413 (Stodghill)
Facsimile: (202) 772-9246 (Stodghill)

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

FACTUAL BACKGROUND ..................................................................................................1

A.     Nature and History of These Proceedings ...............................................................1

B.     The Specific Allegations of the Commission's Complaint .....................................3

ARGUMENT ...........................................................................................................................7

     I.     VENUE IS APPROPRIATE IN THIS DISTRICT ......................................7

     II.     THE COMMISSION'S COMPLAINT SHOULD NOT BE
             DISMISSED ...............................................................................................10

             1.     The Applicable Legal Standards Under Rule 12(b)(6) .....................10

             2.     The Complaint Properly Pleads Aiding and Abetting
                   Against Grendys ................................................................................10

CONCLUSION .......................................................................................................................16

# TABLE OF AUTHORITIES

## CASES

*Atchinson v. District of Columbia*, 315 U.S. App. D.C. 318, 73 F.3d 418 (D.C. Cir. 1996) .................................................................................................... 10

*Conley v. Gibson*, 355 U.S. 41 (1957) .......................................................................... 10

*Greenwood Partners v. New Frontier Media Inc.*, No. 99 CIV. 9099 WK, 2000 WL 278086 (S.D.N.Y. Mar. 14, 2000) ........................................................... 7

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) ........................................................ 10

*Howard v. SEC*, 363 U.S. App. D.C. 100, 376 F.3d 1136 (D.C. Cir. 2004) .......... 11, 13

*Investors Funding Corp. of New York v. Jones*, 161 U.S. App. D.C. 420, 495 F.2d 1000 (D.C. Cir. 1974) ............................................................................ 7

*Investors Research Corp. v. SEC*, 202 U.S. App. D.C. 168, 628 F.2d 168 (D.C. Cir. 1980) ............................................................................................... 11

*Kowal v. MCI Communications Corp.*, 305 U.S. App. D.C. 60, 16 F.3d 1271 (D.C. Cir. 1994) ........................................................................................ 10

*National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994) ............... 10

*Ponce v. SEC*, 345 F.3d 722 (9th Cir. 2003) ................................................................ 15

*SEC v. Apolant*, 411 F. Supp.2d 271 (E.D.N.Y. 2006) ................................................ 15

*SEC v. Coffey*, 493 F.2d 1304 (1974) .......................................................................... 11

*SEC v. Ernst & Young*, 775 F. Supp. 411 (D.D.C. 1991) ............................................. 8

*SEC v. Intelliquis Intern., Inc.*, No. 2:02-CV-674 PGC, 2003 WL 23356426 (D. Utah, Dec. 11, 2003) ..................................................................................... 12

*SEC v. Lucent Technologies, Inc.*, 363 F. Supp. 2d 708 (D.N.J. 2005) ....................... 15

*SEC v. Morris*, No. CIV.A. H-04-3096, 2005 WL 2000665 (S.D. Tex., Aug. 18, 2005) ............................................................................... 13

*SEC v. Orr*, No. 04-74702, 2006 WL 542986 (E.D.Mich., Mar. 6, 2006) .......... 13, 14, 15

*SEC v. Savoy Industrial, Inc.*, 190 U.S. App. D.C. 252, 587 F.2d 1149
(D.C. Cir. 1978) ..................................................................................................8, 9

*SEC v. Stansbury Holdings Corp.*, No. 06-CV-00088-REB-BNB,
2007 WL 552248 (D. Colo. Feb. 20, 2007) ...........................................................12

*SEC v. Wallace*, 94 F. Supp. 2d 1 (D.D.C. 2000) ..............................................................8

*SEC v. Washington Inv. Network*, 374 U.S. App. D.C., 475 F.3d 392
(D.C. Cir. 2007) .....................................................................................................13

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) .........................................................................10

*Steinberg & Lyman v. Takacs*, 690 F. Supp. 263 (S.D.N.Y. 1988) ....................................7

*Warren v. District of Columbia*, 359 U.S. App. D.C., 353 F.3d 36
(D.C. Cir. 2004) .....................................................................................................10

## STATUTES

**SECURITIES EXCHANGE ACT OF 1934**

Section 20(e), [15 U.S.C. § 78t(e)] ...............................................................................10, 11

Section 27, [15 U.S.C. §78aa] .............................................................................................7

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 12(b)(6) .....................................................................................................................10

Rule 15(a) ..........................................................................................................................16

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GARY G. BELL, et al.,<br><br>Defendants. | Civil Action No.<br><br>1:07-cv-00120-CKK |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM IN OPPOSITION TO DEFENDANT JOSEPH GRENDYS'
<u>MOTION TO DISMISS</u>**

Plaintiff Securities and Exchange Commission ("Commission" or "SEC"), through undersigned counsel, respectfully submits this memorandum in opposition to Defendant Joseph Grendys' ("Grendys") motion to dismiss this action as to him because this district is not the proper venue or, alternatively, because the Commission's complaint fails to state a claim against Mr. Grendys. For the reasons set forth below, the Court should deny the motion in its entirety. Alternatively, if the Court determines that the Commission's complaint fails in some respect to satisfy applicable pleading standards, Plaintiff respectfully requests that it be allowed an opportunity to submit an amended complaint.

**FACTUAL BACKGROUND**

**A. Nature and History of These Proceedings**

The Commission's complaint, filed on or about January 18, 2007, alleges that Mr. Grendys and the other defendants named in this action aided and abetted violations of the federal securities laws in connection with a large-scale fraud perpetrated at U.S.

Foodservice ("USF"), a wholly-owned subsidiary of Koninklijke Ahold N.V. ("Royal Ahold" or "Ahold"). Ahold is a publicly-held company organized in the Netherlands with securities registered with the SEC pursuant to Section 12(b) of the Securities Exchange Act of 1934 ("Exchange Act").

During the relevant period, USF's operating income and profit depended on vendor payments, commonly referred to as "promotional allowances" or "PAs." The complaint alleges that USF executives engaged in a scheme that materially inflated the amount of promotional allowances recorded by USF and reflected in operating income on USF's financial statements, which were included in Ahold's Commission filings and other public statements. The complaint further asserts that defendants aided and abetted the fraud by signing and returning audit confirmation letters that they knew, or were reckless in not knowing, were materially false.[1]

This case is the latest of a series of civil enforcement actions the Commission has filed in this Court against personnel at vendors of USF to address similar conduct. On or about January 13, 2005, the Commission filed nine separate complaints seeking injunctive and other relief against persons who were employees of or agents for vendors that supplied USF, alleging that those defendants knowingly or recklessly signed false audit confirmation letters in connection with the 2001 and 2002 audits of USF.[2] On or

---

[1] In addition to Mr. Grendys, the other named defendants are Gary Bell, Anthony Holohan and Michael Smith. Mr. Bell moved separately to stay, transfer or dismiss the Commission's complaint; Mr. Holohan has filed an answer and Mr. Smith has consented to entry of judgment against him. On May 21, 2007, the Commission filed a separate response to Mr. Bell's motion.

[2] See *SEC v. Bailin*, C.A. No. 05-CV-0053; *SEC v. Bowman*, C.A. No. 05-CV-0054; *SEC v. Daly*, C.A. No. 05-Cv-0055; *SEC v. Hannigan*, C.A. No. 05-CV-0056; *SEC v. Marion*, C.A. No. 05-CV-0057; *SEC v. Nettle*, C.A. No. 05-CV-0058; *SEC v. Redgate*, C.A. No. 05-Cv-0059; *SEC v. Robinson*, C.A. No. 05-CV-0060; and *SEC v. Rogers*, C.A. No. 0061. All of these matters, except Daly, were resolved shortly after filing through entry of consent judgments. After this Court denied his motion for a transfer of venue (see Memorandum Opinion dated February 11, 2006), Daly likewise consented to entry of a judgment resolving

2

about November 2, 2005, the Commission filed seven additional separate complaints against other current or former employees of or agents for vendors that supplied USF, also alleging that those persons knowingly or recklessly signed false audit confirmation letters in connection with the 2001 and 2002 audits of USF.[3]

By the instant motion, Mr. Grendys seeks to dismiss the action against him for improper venue, or, in the alternative, on the ground that the SEC's complaint fails to state a claim. As the Commission demonstrates below, Mr. Grendys motion should be denied in its entirety.

### B. The Specific Allegations of the Commission's Complaint

Fairly construed, the Commission's complaint makes, among others, the following factual allegations:

Ahold is a publicly-held company organized in The Netherlands with securities registered with the SEC pursuant to Section 12(b) of the Exchange Act. Ahold's securities trade on the New York Stock Exchange and are evidenced by American Depositary Receipts. Complaint ¶ 5.

During the relevant time, Joseph Grendys was the owner of Koch Poultry, which sold frozen chicken commodities to USF. Grendys currently resides in Illinois. Complaint ¶ 16.

On or about October 17, 2003, Ahold filed as Form 20-F for the fiscal year ended December 29, 2002. Ahold's Form 20-F contained restatements for the fiscal years 2000

---

the issue of liability and reserving the question of whether the Court should impose a civil monetary penalty and, if so, in what amount.

[3] See *SEC v. Crowley*, C.A. No. 05-CV-2133; *SEC v. Henuset*, C.A. No. 05-CV-2135; *SEC v. Langfield*, C.A.No. 05-CV-2136; *SEC v. Lysiak*, C.A.No. 05-CV-2137; *SEC v. Rosenberg*, C.A. No. 05-2139; *SEC v. Schultz*, C.A. No. 05-CV-2140, and *SEC v. Stone*, C.A. No. 05-Cv-2141. All of these cases have been resolved through entry of consent judgments.

and 2001, corrected accounting adjustments for fiscal year 2002, and restated amounts for fiscal years 1998 and 1999 included in the five-year summary data. The restatements indicate that, in its original SEC filings and other public statements, Ahold had overstated: (a) net income by approximately 17.6%, 32.6%, and 88.1% for the fiscal years 2000, 2001 and first three quarters of 2002, respectively; (b) operating income by approximately 28.1%, 29.4%, and 51.3% for the fiscal years 2000, 2001 and first three quarters of 2002, respectively; and (c) net sales by approximately 20.8%, 18.6%, and 13.8% for the fiscal years 2000, 2001 and 2002, respectively. As a consequence, Ahold's SEC filings and other public statements for fiscal years 2000 and 2001 and the first three quarters of 2002 contained materially false and misleading statements. Complaint ¶ 6.

To a significant degree, the material misstatements in Ahold's public filings resulted from a large-scale fraud at Ahold's subsidiary, USF, a foodservice and distribution company with headquarters in Columbia, Maryland. Complaint ¶ 7. During the relevant period, USF executives engaged in a scheme that materially inflated the amount of promotional allowances recorded by USF and reflected in operating income on USF's financial statements, which were included in Ahold's Commission filings and other public statements. Complaint ¶ 9.

The primary method USF executives used to carry out this fraudulent scheme was to inflate improperly USF's promotional allowance income and record completely fictitious promotional allowances sufficient to cover any shortfall from budgeted earnings. Complaint ¶ 18. The overstated promotional allowances aggregated at least $700 million for fiscal years 2001 and 2002 and caused Ahold to report materially false operating and net income for those and other periods. Complaint ¶ 11.

4

USF executives also provided their independent auditors with false and misleading information and personnel at many of USF's major vendors falsely confirmed overstated promotional allowances to the auditors in connection with year-end audits. In an attempt to keep the fraud from being discovered, USF convinced representatives of USF vendors, like Mr. Grendys, to sign and return audit confirmation letters even though the vendors knew, or were reckless in not knowing, that the letters were false. Complaint ¶ 19. In this way, Mr. Grendys and the other vendor representatives named in the Commission's complaint, among others, provided substantial assistance to the USF executives directly responsible for the fraud by signing materially false audit confirmation letters. Complaint ¶ 10.

Specifically, for the audit of the fiscal year ending December 29, 2001, Mr. Grendys received a confirmation letter from USF dated January 24, 2002. It stated, in part:

> In connection with the audit of our financial statements of U.S. Foodservice, Inc. (USF) for the year ended December 29, 2001, please confirm directly with our auditors, Deloitte & Touche, LLP, 100 South Charles Street, 12th Floor, Baltimore, Maryland 21201, the following with respect to Marketing and Merchandising Allowances offered by you to U.S. Foodservice as of December 29, 2001:

| | |
|---|---|
| Balance due to USF at December 30, 2000: | $ 1,650,000 |
| Less: Payments/Deductions made/allowed during 2001 | (2,315,725) |
| Plus: Allowances earned during 2001 | 3,850,000 |
| Ending Balance due to USF at December 29, 2001 | $ 3,184,275 |

Mr. Grendys signed the letter without noting any exceptions and then, on or about February 7, 2002, returned the letter to USF's independent auditors. Complaint ¶¶ 34, 38. When Mr. Grendys signed and returned the audit confirmation letter, he knew, or

5

was reckless in not knowing, that it contained material misstatements, including, but not limited to: (a) the amounts reflected as "Ending Balance due to USF at December 29, 2001" and "Allowances earned during 2001;" (Complaint ¶ 35); and (b) the representation that that USF had purchased 45,000,000 pounds under the base corporate program with Koch Poultry (Complaint ¶ 36).

On the same day -- February 7, 2002 -- that Mr. Grendys sent the false 2001 audit confirmation letter to USF's independent auditing firm, he obtained a side letter from USF. Complaint ¶ 38. The side letter referred to the January 24, 2002 audit confirmation letter and purported to "clarify" it. The side letter, addressed to Mr. Grendys, stated:

> *The purpose of [the January 24, 2002 audit confirmation letter] was to have you confirm Marketing and Merchandising Allowances offered by you to USF as of December 29, 2001.*
>
> *Koch Poultry owes $68,075.97 to USF as of 12-29-01.*
>
> \* \* \*
>
> *Volume purchased during Dec 31, 2000 to Dec 29, 2001 [was] 10,866,269 [pounds].*

Mr. Grendys' side letter also stated that "any documented differences from the confirmation and actual activity during the time frame covered with the confirmation are not obligations of Koch Poultry and no payments will be requested of Koch Poultry now or in the future as part of the confirmation." Complaint ¶40. Mr. Grendys' side letter went on to list, in one column, what the January 24, 2002 confirmation letter said and, in an adjacent column, what the real numbers were. For example, the side letter shows that Grendys confirmed a $.05 Base Program for Marketing Programs, but in fact the correct number was $.03. Complaint ¶ 41.

6

Despite this side letter, Mr. Grendys falsely confirmed to USF's independent auditors that Koch Poultry owed USF $3,184,275 as of December 29, 2001. Grendys also falsely confirmed to USF's auditors that Koch Poultry sold 45,000,000 pounds of volume to USF from December 31, 2000 to December 29, 2001. Complaint ¶ 39.

Mr. Grendys was aware of several "red flags" or suspicious events, including without limitation that USF management explicitly encouraged him to sign and send to USF's independent auditors an audit confirmation letter that Grendys knew, or was reckless in not knowing, was (1) materially false, and (2) would misstate USF's books and records and mislead USF's independent auditors. Complaint ¶ 43.

## ARGUMENT

### I.    VENUE IS APPROPRIATE IN THIS DISTRICT.

Section 27 of the Exchange Act provides, in pertinent part, that venue is proper in any forum "wherein any act or transaction constituting the violation occurred" as well as "in any district wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 78aa. "As the courts interpret this provision, 'any non-trivial act in the forum district which helps to accomplish a securities law violation is sufficient to establish venue.'" *Greenwood Partners v. New Frontier Media Inc.*, No. 99 CIV. 9099 WK, 2000 WL 278086, at *6 (S.D.N.Y. Mar. 14, 2000) (quoting *Steinberg & Lyman v. Takacs*, 690 F. Supp. 263, 267 (S.D.N.Y. 1988)).

Courts in this circuit have repeatedly held that venue is proper in this district for enforcement actions brought by the Commission that involve reports required to be filed with the Commission at its offices in the District of Columbia. *Investors Funding Corp. of New York v. Jones*, 161 U.S. App. D.C. 420, 495 F.2d 1000, 1003 (D.C. Cir. 1974)

("We hold that venue for civil enforcement actions of the Commission, involving reports to be filed in the District of Columbia, is here."); *SEC v. Savoy Indus., Inc.*, 587 F. 2d 1149, 1154 (D.C. Cir. 1978)(involving three filings under the Exchange Act); *SEC v. Wallace*, 94 F. Supp. 2d 1 (D.D.C. 2000)(involving fraudulent scheme to sell unregistered securities and failure to register with the Commission as investment advisors).[4] Here, the Commission's claims against Mr. Grendys are predicated upon his knowingly having provided substantial assistance to USF executives in connection with a scheme to report earnings equal to or greater than its target, regardless of the company's actual revenues.[5] The Commission's complaint plainly alleges that certain transactions, acts, practices and course of business that are the subject of this action, including Ahold's filing of materially false and misleading statements with the SEC located in the District of Columbia, took place in this district. Under these circumstances, venue is proper in this district.

This court's decision in *SEC v. Ernst & Young*, 775 F. Supp. 411 (D.D.C. 1991), a civil enforcement action by the Commission against an accounting firm for aiding and abetting securities violations by two issuers that filed false and misleading report with the SEC, is directly on point. In that case, the SEC alleged that the accounting firm was liable for aiding and abetting the violations because, in connection with audit reports it

---

[4] Although Mr. Grendys expends considerable effort in an attempt to distinguish these decisions (see Mem. at pp. 6-8), he apparently does not dispute their basic holding: Venue is appropriate in this district for Civil enforcement actions brought by the Commission when such action arise from reports or other documents required to be filed with the Commission. Mr. Grendys seems to argue only that with respect to claims for aiding and abetting liability, to satisfy venue requirements, plaintiff must show some "close connection" between the defendant's conduct and the proposed forum.

[5] On October 13, 2004, the Commission filed fraud and other charges against Ahold arising from, among things, the large-scale fraud at USF. *See SEC v. Ahold Koninklijke, N.V. (Royal Ahold)*, C.A. No. 04-1742 (D.D.C.) (RMU). The Commission's claims against Ahold were resolved through entry of a consent judgment.

prepared for the two corporations that were included in the filings that corporations made with the Commission in Washington, DC, Ernst & Young had falsely certified that it was independent of the two corporations. 775 F. Supp. at 412. In rejecting the defendant's motion to dismiss for improper venue, the Court, cited to the D.C. Circuit's decision in *Savoy,* among others, and held that "the act of filing in the District of Columbia constitutes the basis of the wrongdoing alleged in the complaint" (*Id.* at 413), and thus, venue was proper in the District of Columbia, where the filings occurred.[6]

In *SEC v. Daly*, C. A. No. 05-CV-0055(CKK) (D.D.C. Feb. 11, 2006) (Memorandum Opinion), a factually-related Commission enforcement action against another USF vendor for aiding and abetting Ahold's securities violations, this Court also considered and rejected a similar venue challenge. In *Daly*, the defendant, a Texas resident, argued that venue was improper in this district because "he signed all of the documents at issue at his residence in Texas, no part of the case transpired in the District of Columbia and no witnesses reside here." *Daly*, Mem. Op. at 3. In denying Daly's motion, the Court, concluded that 'since Defendant, in concert with USF, allegedly aided Ahold in filing fraudulent figures with the SEC in the District of Columbia, venue is proper" here. *Daly*, Mem. Op. at 4.

---

[6] Mr. Grendys argues ( Mem. at 8) that *Ernst & Young* is factually distinguishable from the instant case, because there the representatives of the defendant were required to sign the false audit reports and did so with the knowledge and intent that they would be filed in the District of Columbia. Thus, he argues, citing only this decision, that the "case law appears to require a close connection between the defendant and the District in which venue is asserted (Mem. at 8). Assuming for the sake of argument that such a requirement exists, Plaintiff submits that Mr. Grendys' conduct here, as alleged in the complaint, satisfies that standard.

## II. THE COMMISSION'S COMPLAINT SHOULD NOT BE DISMISSED.

### 1. The Applicable Legal Standards Under Rule 12(b)(6).

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the challenged complaint must be construed in the light most favorable to the non-moving party, and all facts alleged must be accepted as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004). Additionally, the non-moving party is entitled to have all inferences from the facts alleged drawn in its favor. *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996), *citing Kowal v. MCI Comm. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) (the complaint must be construed so as to favor the non-moving party). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Commission's "complaint must be sustained if relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *National Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994). The Complaint here, under these liberal standards, has alleged more than enough to withstand Mr. Grendys' motion to dismiss.

### 2. The Complaint Properly Pleads Aiding and Abetting against Grendys.

Section 20(e) of the Exchange Act, 15 U. S. C. § 78t(e), imposes liability upon persons who aid and abet primary violations of the securities laws: "[A]ny person that knowingly provides substantial assistance to another person in violation of a provision of this title, or of any rule or regulation issued under this title, shall be deemed to be in

violation of such provision to the same extent as the person to whom such assistance is provided." 15 U.S.C. § 78t(e).

To establish a defendant's liability for aiding and abetting liability under Section 20(e) in this Circuit,[7] the Commission must show that:

1) Another party has committed a securities law violation;

2) The defendant accused of aiding and abetting had a general awareness that his role was part of an overall activity that was improper; and

3) The defendant accused of aiding and abetting knowingly and substantially assisted the principal violation.

*Investors Research Corp. v. SEC*, 628 F.2d 168, 178 (D.C. Cir.), *cert. den.*, 101 S.Ct. 317 (1980).

The only element of aiding and abetting at issue here[8] is whether Mr. Grendys had a "general awareness that his role was part of an overall activity that was improper." *Investors Research Corp.*, 628 F.2d at 178. This can be established through a showing that the defendant acted with "extreme recklessness." In *Howard v. SEC*, 376 F.3d 1136, 1143 (D.C. Cir. 2004), this Circuit held that:

> "Extreme recklessness" - or as many courts of appeals put it, "severe recklessness" - may be found if the alleged aider and abettor encountered "red flags," or "suspicious events creating reasons for doubt" that should have alerted him to the improper conduct of the primary violator, . . . or if there was "a danger ... so obvious that the actor must have been aware of" the danger.

376 F.3d at 1143 (citations omitted).

---

[7] Grendys asserts (Mem at 10) that the elements for aiding and abetting are those set forth in the Sixth Circuit case, *SEC v. Coffey*, 493 F.2d 1304, 1316 (1974). There are important differences between the Sixth Circuit and DC Circuit formulations of aiding and abetting; *Investors Research Corp. v. SEC*, 628 F.2d 168 (D.C. Cir 1980) and *Howard v. SEC*, 376 F.3d 1136 (D.C. Cir. 2004) govern here.

[8] Grendys concedes, for the purposes of his motion to dismiss, that the "primary violation" and "substantial assistance" prongs are met. *See* Grendys Mem. at 11 n. 6.

11

The Commission's complaint adequately alleges this element as to Mr. Grendys. The Complaint asserts that USF sent Mr. Grendys a letter requesting that "[i]n connection with the audit of our financial statements of U.S. Foodservice, Inc. (USF) for the year ended December 29, 2001" he confirm certain information with Deloitte & Touche, USF's independent auditor. Complaint ¶ 34. The complaint further alleges that Mr. Grendys was requested to send the confirmation letter directly to the auditors at their Baltimore, Maryland office and not USF at its Columbia, Maryland headquarters. *Compare* Complaint ¶ 34 ("please confirm directly with our auditors, Deloitte & Touche, LLP, 100 South Charles Street 12th Floor, Baltimore, Maryland 21201,") *with* ¶ 7 ("Ahold's subsidiary, USF, a foodservice and distribution company with headquarters in Columbia, Maryland."). In that confirmation letter, the complaint alleges that Mr. Grendys was asked to confirm specific amounts, including "Allowances earned during 2001" and "Ending Balance due to USF at December 29, 2001." Complaint ¶ 34.[9] The complaint further alleges that, on or about February 7, 2002, Grendys signed the letter without noting any exception, and returned the letter to USF's independent auditors. *Id.*

The Commission's complaint further alleges that on the same day Mr. Grendys sent the false 2001 audit confirmation letter to USF's independent auditor, he obtained a side letter contradicting the audit confirmation letter. Complaint ¶ 38. Mr. Grendys had the side letter countersigned by USF management, but he did not send it to USF's independent auditors. *Id.* at ¶¶ 38, 42. The Commission alleges that the side letter shows

---

[9] In *SEC v. Stansbury Holdings Corporation*, 2007 WL 552248 (D. Colo. Feb. 20, 2007), the court held that aiding and abetting was properly pleaded where the complaint stated the defendant knew that key assets were worth much less than reported. In this instance, Mr. Grendys knew, or was reckless in not knowing, that key assets of USF – i.e., its PA account receivables balances – were significantly less than he confirmed to USF's outside auditors. *See also SEC v. Intelliquis Intern., Inc.*, 2003 WL 23356426 * 14 (D. Utah 2003) (defendant auditor "provided substantial assistance in the false reporting" by, among other things, doing nothing when a $3 million overstatement in accounts receivables was brought to his attention).

that Grendys understood the numbers he confirmed to Deloitte & Touche were not correct. It was only after both USF and Grendys signed the side letter – presenting the correct accounts receivable balance and PA income owed by his company to USF – that Grendys confirmed the false information to Deloitte & Touche. These allegations support the inference that Mr. Grendys was aware that he was providing false information to USF's auditors.

The Complaint goes further and alleges that Mr. Grendys encountered "red flags" and other "suspicious events creating reasons for doubt" demonstrating that USF and its management were engaged in misconduct. *See Howard v. SEC*, 376 F.3d 1136, 1143-9 (D.C. Cir. 2004). Considering the objective evidence of the "surrounding circumstances and the expectations of the parties" as set forth in the Complaint, it is reasonable to conclude that Mr. Grendys was not engaged in "a transaction in the ordinary course of his business." *Compare SEC v. Morris*, 2005 WL 2000665 at * 9 (S.D. Tex. 2005).

Based on the allegations in the Complaint, one can reasonably conclude not only that Mr. Grendys knew, or was reckless in not knowing, that he was confirming false information to D&T but that Defendant was also aware that USF understood him to be confirming false information to its own auditors.[10]

In *SEC v. Orr*, 2006 WL 542986 (E.D.Mich. 2006), which Mr. Grendys cites, the court considered the motions to dismiss of three individuals: Orr, Kirkpatrick and Bixler. Orr was an employee of the issuer, Kmart, while Kirkpatrick and Bixler were employees

---

[10] To the extent Defendant was told by USF management that this audit confirmation letter was only an internal USF matter, that representation expressly conflicted with the audit confirmation letter Grendys signed. This would be further evidence in Grendys' possession at the time he signed the false audit confirmation that USF was engaged in deceit and fraud. *See SEC v. Washington Investment Network*, 475 F.3d 392, 406 (D.C. Cir. Feb. 6, 2007) (aiding and abetting found where defendant knew of bar order and continued involvement of barred co-owner; district court did not need to explicitly find that continued association was improper as it was logical conclusion from known facts).

of two vendors that sold products to Kmart. *Orr* at *1. All three defendants were alleged to have acted in concert with others to "prematurely report[…] allowances earned by Kmart under vendor contracts" and that there were "so-called 'secret side agreements' which were not disclosed to Kmart's accounting department or its independent auditors." *Id.* Of the three defendants involved, Mr. Grendys has pointed to Bixler, the only of the three defendants against whom aiding and abetting claims were dismissed. *Orr*, 2006 WL 542986 at *12-15.

The *Orr* court, however, found that the aiding and abetting allegations against Kirkpatrick, the other vendor defendant,[11] were sufficient. *Id.* at *12-13. The allegations in the complaint that the court noted included, among others: (1) communications to the defendant from a Kmart executive suggesting an improper purpose for an upcoming transaction; (2) execution by the defendant of the internal Kmart forms that created a false impression about a prepayment; and (3) defendant's falsely confirming the accuracy of those internal forms to Kmart's auditors. *Orr*, 2006 WL 542986 at *12. More significantly, the court held:

> By signing off on the VATS forms, which were inaccurate on their face, and subsequently confirming their validity to Kmart's auditors, reasonable jurors could find that Kirkpatrick acted knowingly and that his actions subsequently assisted the overall scheme.

*Id.* at *12. On the other hand, the complaint merely alleged that Bixler made a prepayment at year-end without any other indication that something improper was happening at Kmart. *See Orr*, 2006 WL 542986 at *13. The court found that, although it

---

[11] Moreover, the court found that the complaint properly alleged that aiding and abetting against Orr, the Kmart executive, with regard to two of four transactions specified in the complaint. *SEC v. Orr*, 2006 WL 542986 at *14. For the two dismissed transactions, there were no allegations linking Orr to them. For the other two, however, the complaint alleged direct involvement and intentional misrepresentations by Orr.

14

was vague, the Kmart form that Bixler completed was not false on its face and the complaint's allegation that Bixler lied to Kmart's auditors was conclusory in nature. *Id.* at *13.[12]

The Commission's complaint establishes that Mr. Grendys was aware that USF was falsely presenting its PA income and PA accounts receivable information <u>and</u> lying about it to its auditors. One can also conclude from these factual allegations that Mr. Grendys likewise knew, or was reckless in not knowing, that the information he provided USF's auditors was false and that it involved USF's financial statements. *Ponce v. SEC*, 345 F.3d 722, 737 (9th Cir. 2003) (defendant, the issuer's independent auditor, aided and abetted where he "certainly had knowledge, or at least was reckless in not recognizing, the misleading nature of the statements" although he may not have conceived the reports as false or misleading at the time he made them); *SEC v. Apolant*, 411 F. Supp.2d 271, 277 (E.D.N.Y. 2006) (aiding and abetting was properly pled where the complaint alleged the defendant knew what he was representing to the public about the issuer was deceptive despite being literally true).

---

[12] Mr. Grendys fundamentally misstates the Court's decision in *SEC v. Lucent Technologies, Inc.*, 363 F. Supp. 2d 708 (D.N.J. 2005). Instead of one defendant who prevailed on her motion to dismiss as Mr. Grendys presents the case, the *Lucent Technologies* decision actually deals with two separate individual defendants, only one of whom prevailed. The decision reported at 363 F. Supp. 2d 708 rules upon both defendants' motions to dismiss, holding that aiding and abetting was properly pled against one, Mr. Carter, but not against the other, Ms. Hayes-Bullock. Defendant Carter was a high-level sales executive at Lucent who was alleged to have: 1) authorized an oral side agreement concerning an expensive purchase, 2) instructed his subordinates to obtain a purchase order for it while, 3) knowing that the purchase price was uncertain because of the side agreement. 363 F.Supp.2d at 716. Carter's scienter was alleged satisfactorily by letters signed by Carter that falsely presented the purchase to Lucent's accounting department. 363 F.Supp.2d at 717-9. The other defendant, Ms. Hayes-Bullock, prevailed upon her motion to dismiss because the SEC did not "adequately allege when Hayes-Bullock was told of the oral side agreement," which that Court viewed as failure to plead with particularity. *Id.* at 725-6. Mr. Grendys is more like Carter, who knew of the side agreements, was aware of the real business transactions between the parties, and executed contrary letters regarding that business, than Hayes-Bullock.

15

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Mr. Grendys' motion in its entirety. Alternatively, should the Court determine that the Commission's complaint fails in some respect to satisfy applicable pleading standards, Plaintiff respectfully requests that it be allowed an opportunity to submit an amended complaint. See Fed. R. Civ. P 15(a)(Leave to amend "shall be freely given when justice so requires").

Dated: May 25, 2007

Respectfully submitted,

/s/
Charles D. Stodghill (DC Bar No. 256792)
Matthew B. Greiner (DC Bar No. 448480)
Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street N.E.
Washington, DC 20549
Telephone: (202) 551-4413 (Stodghill)
Facsimile: (202) 772-9246 (Stodghill)