UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    *Plaintiff*,<br><br>    v.<br><br>GARY G. BELL, JOSEPH GRENDYS,<br>ANTHONY HOLOHAN, and MICHAEL SMITH,<br><br>    *Defendants*. | Civil Action No. 1:07CV00120 |

**REPLY IN SUPPORT OF GARY BELL'S MOTION TO STAY, OR IN THE ALTERNATIVE TO TRANSFER TO THE DISTRICT OF MARYLAND, OR IN THE ALTERNATIVE TO DISMISS FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

**Page**

I.    A STAY IS NECESSARY TO PREVENT SEVERE PREJUDICE TO
MR. BELL ........................................................................................................... 1

II.   IF THE COURT DECLINES TO STAY, IT SHOULD TRANSFER THIS CASE
TO THE DISTRICT OF MARYLAND ............................................................ 4

    A.    Transfer To The District Of Maryland Is Appropriate Under 28 U.S.C.
§ 1404(a) .................................................................................................. 4

        1.    Venue Is Proper In The District Of Maryland ........................... 4

        2.    The Considerations Of Convenience And The Interests Of Justice
Weigh In Favor Of Transferring This Action ........................... 5

            a.    The Private Interest Factors Warrant Transferring This
Action To The District Of Maryland ............................ 5

            b.    The Public Interest Factors Also Weigh In Favor Of
Transferring This Action To The District of Maryland ................ 7

III.  IF THE COURT DECLINES TO STAY OR TRANSFER THIS CASE, IT
SHOULD DISMISS THE COMPLAINT WITH PREJUDICE ....................... 8

    A.    All Claims Are Defective Because A Subsidiary Of An Issuer Is Not An
Issuer ........................................................................................................ 8

    B.    The Complaint Does Not Allege That Mr. Bell Knowingly Rendered
Substantial Assistance To A Securities Fraud ...................................... 10

    C.    The Complaint Does Not Allege A Material Misstatement Resulting From
Mr. Bell's Alleged Conduct .................................................................. 13

    D.    The Complaint Should Be Dismissed Without Leave To Amend ....................... 15

IV.   CONCLUSION ............................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

Page

### CASES

*Chill v. General Electric Co.*,
    101 F.3d 263 (2d Cir. 1996)............................................................10

*Comptroller of Currency v. Calhoun First Nat'l Bank*,
    626 F. Supp. 137 (D.D.C. 1985) .....................................................6

*Gaither v. District of Columbia*,
    No. 03-1458, 2005 U.S. Dist. LEXIS 35426 (D.D.C. 2005) .............1

*Ganino v. Citizens Util. Co.*,
    228 F.3d 154 (2d Cir. 2000)........................................................13, 14

*Greenwood Partners v. New Frontier Media Inc.*,
    No. 99 CIV. 9099 WK, 2000 WL 278086 (S.D.N.Y. Mar. 14, 2000)...............................4

*Howard v. Securities & Exch. Comm'n*,
    376 F.3d 1136 (D.C. Cir. 2004) ....................................................12

*Investors Research Corp. v. Securities & Exch. Comm'n*,
    628 F.2d 168 (D.C. Cir. 1980) ......................................................12

*Kafack v. Primerica Life Ins. Co.*,
    934 F. Supp. 3 (D.D.C. 1996) ........................................................7

*Liban v. Churchey Group II, L.L.C.*,
    305 F. Supp. 2d 136 (D.D.C. 2004) ...............................................8

*Oceanic Exploration Co. v. Conoco Phillips, Inc.*,
    No. 04-332, 2007 U.S. Dist LEXIS 7915 (D.D.C. Feb. 5, 2007) .......7

*Ponce v. Securities & Exch. Comm'n*,
    345 F.3d 722 (9th Cir. 2003) .......................................................12

*Securities & Exch. Comm'n v. Apolant*,
    411 F. Supp. 2d 271 (ED.D.N.Y. 2006) ........................................12

*Securities & Exch. Comm'n v. Daly*,
    C.A. No. 05-CV-00055 (CKK) (D.D.C. February 11, 2006) .............6

*Securities & Exch. Comm'n v. Dresser Indus., Inc.*,
    628 F.2d 1368 (D.C. Cir. 1980) ..............................................1, 2, 3

## TABLE OF AUTHORITIES

Page

*Securities & Exch. Comm'n v. Ernst & Young*,
  775 F. Supp. 411 (D.D.C. 1991) ..............................................................................5, 7

*Securities & Exch. Comm'n v. HealthSouth Corp.*,
  261 F. Supp. 2d 1298 (N.D. Ala. 2003) ........................................................................2

*Securities & Exch. Comm'n v. Orr*,
  No. 04-74702, 2006 WL 542986 (E.D. Mich. Mar. 6, 2006) ....................................12, 13

*Securities & Exch. Comm'n v. Stansbury Holdings Corp.*,
  2007 WL 552248 (D. Colo. Feb. 20, 2007) ..................................................................12

*Securities & Exch. Comm'n v. Todd*,
  No. 03CV2230, 2007 WL 1574756 (S.D. Cal. May 30, 2007) ........................................14

*Securities & Exch. Comm'n v. Intelliquis Int'l, Inc.*,
  2003 WL 23356426 (D. Utah 2003) ............................................................................12

*Sheraton Operating Corp. v. Just Corporate Travel*,
  84 F. Supp. 22 (D.D.C. 1997) ..................................................................................5, 6

*Southern Utah Wilderness Alliance v. Norton*,
  No. 01-2518, 2002 U.S. Dist. LEXIS 27414 (D.D.C. June 28, 2002)............................4, 5

*Trout Unlimited v. U.S. Dept. of Agriculture*,
  944 F. Supp. 13 (D.D.C. 1996) ................................................................................5, 6

*U.S. v. Kordel*,
  397 U.S. 1 (1970).....................................................................................................2

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964)..................................................................................................4

*Vess v. Ciba-Geigy Corp.*,
  317 F.3d 1097 (9th Cir. 2003) ..................................................................................14

## STATUTES

15 U.S.C. § 78aa .......................................................................................................4

15 U.S.C. § 78(c)(8)...................................................................................................10

## TABLE OF AUTHORITIES

Page

15 U.S.C. § 78m(a) ..............................................................................................8

15 U.S.C. § 78m(b)(2) .........................................................................................8

28 U.S.C. § 1404(a) ......................................................................................4, 7, 8

Fed. R. Civ. P. 9(b) .......................................................................................8, 14

Fed. R. Civ. R. 12(b)(6) .......................................................................................8

Defendant Gary Bell respectfully submits this reply memorandum in support of his motion to stay this case; or, in the alternative, to transfer it to the District of Maryland; or, in the alternative, to dismiss the Complaint with prejudice.  The three sections of this memorandum reply to the contentions of plaintiff Securities and Exchange Commission ("SEC") in its Memorandum In Opposition ("Opp") as to each alternative grounds for relief sought by Mr. Bell.

## I.     A STAY IS NECESSARY TO PREVENT SEVERE PREJUDICE TO MR. BELL

The parties agree that granting a stay is a matter of this Court's discretion.  Bell Mem. at 10; Opp at 8-9.[1]  The factor courts consider in deciding whether to exercise such discretion weighs heavily in favor of a stay.

As a threshold matter, the SEC claims that the five factor standard of *Gaither v. District of Columbia*, No. 03-1458, 2005 U.S. Dist. LEXIS 35426, *8 (D.D.C. 2005), and not the six factors cited by Mr. Bell, should guide the Court's discretion.  Opp at 9.  In any event the factors cited by both Mr. Bell and the SEC include:  (1) the potential prejudice to the plaintiff caused by a stay; (2) the public interest; (3) the defendant's interest; and (4) judicial efficiency.  *Id.*; Bell Mem. at 11.  The SEC also acknowledges the relevance of a fifth factor cited by Mr. Bell, the status of the criminal proceeding.  Opp at 12 (citing *Gaither* to state that "the case for staying civil proceedings 'is far weaker' prior to the issuance of an indictment in the related criminal matter").  Moreover, *Securities & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980), holds that the strongest case for a stay is "where a party under indictment is required to defend a civil or administrative action *involving the same matter*."  (Emphasis added.)  In other words, whether the issues in the criminal and civil cases overlap is a factor to be considered under the law of this Circuit, as Mr. Bell contended.  The other factor identified by the SEC, the interests of third parties, has no bearing here because there are no specific third parties who would be affected by a stay.  Opp at 12.

---

[1]  Mr. Bell adopts the SEC's convention and refers to his opening brief as "Bell Mem."

In sum, the differences highlighted by the SEC are merely semantic in nature.  The most important consideration for the Court is, regardless of the specific factors considered, whether the "interests of justice" require a stay of this case as to Mr. Bell to avoid prejudice.  *U.S. v. Kordel*, 397 U.S. 1, 12 n.27 (1970); *Securities & Exch. Comm'n v. HealthSouth Corp.*, 261 F. Supp. 2d 1298, 1326 (N.D. Ala. 2003).  This is assessed on the specific circumstances of the case.  *Kordel*, 397 U.S. at 12 n. 27; *Dresser Indus.*, 628 F.2d at 1375.  The circumstances of this case are that due to the threat of criminal prosecution for the same conduct alleged by the SEC, Mr. Bell will be forced to assert his Fifth Amendment privilege against self-incrimination in this case every step of the way, and thus it would result in severe prejudice to compel him to proceed with this case before the threat of criminal prosecution has subsided.  Bell Mem. § III.

In opposition, the SEC argues that Mr. Bell "substantially overstates" the prejudice he will face without a stay because he has not yet been indicted.  *See* Opp at 10-11.  However, there is no rule requiring that an indictment be issued before a stay may be granted.  Rather, numerous courts have granted pre-indictment stays when the government was conducting an active criminal investigation, as the USAO is here.  Bell Mem. § III(B)(2).  Moreover, the SEC cannot speak for the USAO, and thus is not in a position to tell Mr. Bell whether he should fear criminal prosecution.  The fact remains that the USAO explicitly told Mr. Bell's counsel that Mr. Bell was a current target of an active criminal investigation.  *Id.* §§ III(B)(1), (2); Jacobs Aff. ¶¶ 2, 4.[2] Faced with such unambiguous statements, Mr. Bell has no choice but to assert the Fifth Amendment until the threat of prosecution subsides.  Jacobs Aff. ¶¶ 5, 6.  This is not a matter of hypotheticals or generalities:  without a stay Mr. Bell *will* assert the Fifth Amendment at every opportunity, as is his right.[3]  The law is clear that such a situation would create a serious disadvantage in defending the instant action, and warrants a stay.  Bell Mem. § III(B)(3).

---

[2]  The SEC notes that the two other defendants in this case have not requested stays.  Opp at 11 n.11.  However, there is no indication that their counsel, like Mr. Bell's counsel, was warned that their clients were targets of a criminal investigation.

[3]  So long as  Mr. Bell's fear of prosecution is neither "fanciful" nor "imaginary," or he "reasonably apprehends" a risk of self-incrimination, Mr. Bell is well within his right to assert the Fifth Amendment.

The SEC also speculates that if the case is delayed, witnesses may become unavailable, memories may fade, and enforcement resources may be diverted. Opp at 10. But Mr. Bell does not seek an extensive stay; rather, he seeks only to stay this action until the criminal statute of limitations expires in October 2008. Bell Mem. at 12 n.10; *id.* at 16 (citing cases where courts granted significantly longer stays, including an indefinite stay). Moreover, the SEC's concerns about the passage of time are difficult to explain in light of its decision to wait until January 18, 2007—almost five years after Mr. Bell's alleged misconduct and more than two years after the SEC filed practically identical lawsuits against similarly situated individuals—to sue Mr. Bell.[4]

The SEC also suggests that the Court should consider "less drastic means" than a stay, such as "protective orders or other limitations on discovery." Opp at 11. Although Mr. Bell has demonstrated that the Court can and should grant a stay of all proceedings as to Mr. Bell, if the Court denies the stay, the Court should nevertheless consider alternate measures to protect Mr. Bell's interests in both the civil and criminal arenas, such as a stay of discovery only as to Mr. Bell until the expiration of the criminal statute of limitations or an appropriate protective order, the details of which can be discussed at oral argument if necessary. Courts in this jurisdiction have discretion not only to stay civil proceedings in their entirety, but also to stay discovery or impose protective orders and other conditions when the interests of justice seem to require. *Dresser Indust.*, 628 F.2d at 1375.

---

Bell Mem. at 13, 14 n.12; *see also id.* at 15 (citing cases stating that the assertion of the Fifth Amendment privilege does not depend on the likelihood, but rather the *possibility* of prosecution). There is nothing fanciful or imaginary about statements by the USAO to Mr. Bell's attorney that, essentially, Mr. Bell could be prosecuted at any minute. *See* Jacobs Decl. ¶¶ 2, 4. The SEC is thus misguided in its interpretation of when it is proper to assert the Fifth Amendment, and in its belief that it is merely speculative to foresee disputes concerning the assertion of the Fifth Amendment if a stay is not granted. *See* Opp at 12.

[4] For the same reason, the SEC's assertion that the public interest would be furthered by an expeditious resolution of this action (Opp at 11) rings hollow. In any event, the public interest factor militates against a stay if only if the case for which a stay is opposed is designed to mitigate any "tangible threat of immediate and serious harm to the public at large." Bell Mem. at 18. That is not the case here.

Accordingly, for the reasons set forth above and in his moving brief, Mr. Bell respectfully requests that the Court grant a stay of the action against him until the expiration of the criminal statute of limitations.

## II.  IF THE COURT DECLINES TO STAY, IT SHOULD TRANSFER THIS CASE TO THE DISTRICT OF MARYLAND

### A.  Transfer To The District Of Maryland Is Appropriate Under 28 U.S.C. § 1404(a)

If the Court decides not to stay this action as to Mr. Bell, a discretionary transfer to the District of Maryland pursuant to 28 U.S.C. § 1404(a) is warranted.  Section 1404(a) grants the Court broad discretion to consider motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness."  *Southern Utah Wilderness Alliance v. Norton*, No. 01-2518, 2002 U.S. Dist. LEXIS 27414, *6 (D.D.C. June 28, 2002).  Transfer is appropriate when:  (1) the plaintiff originally could have brought the action in the proposed forum, which in this case is undisputed; and (2) when the considerations of convenience and the interests of justice weigh in favor of a transfer.  *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).  Here, a transfer would be more convenient for the parties and witnesses, and would further the interests of justice.  Bell Mem. § IV(A).  The SEC's arguments to the contrary are unavailing.

#### 1.  Venue Is Proper In The District Of Maryland

The parties agree that venue is proper "in the district wherein any act or transaction constituting the violation occurred" or "in any district wherein the defendant is found or is an inhabitant."  15 U.S.C. § 78aa.  This provision has been interpreted to mean that "any non-trivial act in the forum district which helps to accomplish a securities law violation is sufficient to establish venue."  *Greenwood Partners v. New Frontier Media Inc.*, No. 99 CIV. 9099 WK, 2000 WL 278086, *6 (S.D.N.Y. Mar. 14, 2000).  The SEC alleges both that Mr. Bell transacted business in Maryland and that the violation of securities laws occurred in Maryland.  *See* Bell Mem. § II(A), (B); *see also* Opp at 17.  Accordingly, the first factor for a Section 1404(a) transfer is satisfied.

2.     **The Considerations Of Convenience And The Interests Of Justice Weigh In Favor Of Transferring This Action**

The parties agree that in assessing whether convenience and justice weigh in favor of a transfer, courts consider the convenience of the parties and the witnesses, and the interests of justice. *Trout Unlimited v. U.S. Dept. of Agriculture*, 944 F. Supp. 13, 16 (D.D.C. 1996). These factors are not exclusive, and a motion to transfer requires the court to adjudicate such motions on an individualized basis weighing "case specific factors relating to the private interests of the parties and the public interests of the courts." *Southern Utah Wilderness Alliance*, 2002 U.S. Dist. LEXIS 27414 at *6. The weight of the factors in this case justified a transfer.

a.     **The Private Interest Factors Warrant Transferring This Action To The District Of Maryland**

The private interests of the parties weighs decidedly in favor of transferring this action to the District of Maryland. Most notably, the convenience of the parties and witnesses weighs heavily in favor of transfer. The SEC concedes that the majority of relevant witnesses and evidence are located in Maryland. Opp at 16, 17. USF is headquartered in Columbia, Maryland, and its independent auditors are located in Baltimore. *Id*. at 17. The current and former personnel of USF and its independent auditors, both of which are located in Maryland, are "most likely to possess majority [sic] of information relevant to the issues presented." *Id.* Moreover, the SEC's opposition did not dispute that where the SEC is involved, the convenience factors generally weigh in favor of transfer, because "[t]he SEC regularly investigates and tries cases all over the country." *See Securities & Exch. Comm'n v. Ernst & Young*, 775 F. Supp. 411, 415 (D.D.C. 1991).

As against this factor weighing in favor of transfer, the SEC cites its own decision to file suit in this District. While a plaintiff's choice of forum is a private interest factor courts take into consideration, it is by no means determinative. *Trout Unlimited*, 944 F. Supp. at 16. The SEC contends that according to *Sheraton Operating Corp. v. Just Corporate Travel*, 84 F. Supp. 22 (D.D.C. 1997), the plaintiff's choice of forum is of "paramount consideration." Opp at 14. In that case, however, the defendant had deliberate and substantial connections to the District of

Columbia, the plaintiff's chosen forum.[5]  In contrast, where the plaintiff chooses a forum with no meaningful ties to the controversy, its choice of venue is given less weight.  *Trout Unlimited*, 944 F. Supp. at 17; *see also Comptroller of Currency v. Calhoun First Nat'l Bank*, 626 F. Supp. 137, 140 n.9 (D.D.C. 1985) ("plaintiff's choice of forum is no longer entitled to a great deal of weight, particularly when there is an insubstantial factual nexus with the plaintiff's choice.") (citations omitted).

That is the situation here.  None of the defendants are residents of this District.  Bell Mem. § II(A).  Neither is USF, the company whose employees supposedly fostered a fraud.  Opp at 17.  Mr. Bell is not alleged to have aided and abetted any conduct that occurred in this District.  Bell Mem. at 22 n.20.  Most importantly, and in direct contrast to *Sheraton,* Mr. Bell is not alleged to have transacted any business in this District.  Rather, the Complaint alleges that Mr. Bell's wrongful conduct involved sending letters from California to Maryland.  Bell Mem. § II(B).  While the Complaint alleges that USF contacted various vendors (including Mr. Bell) in an attempt to persuade them to sign and return false audit confirmation letters, no such contact is alleged to have taken place in this District.  Thus, the SEC cannot establish a nexus between Mr. Bell and the District of Columbia.  Accordingly, the SEC's choice of venue is not entitled to a great deal of weight.

Finally, the SEC's reliance on *Securities & Exch. Comm'n v. Daly*, C.A. No. 05-CV-00055 (CKK) (D.D.C. February 11, 2006), is misplaced.  The SEC contends that in *Daly*, the defendant sought to transfer the action to a district in which he could more readily obtain legal counsel, but his motion was denied because a transfer of venue would not increase the "net convenience."  Opp at 15.  That is not the situation here.  Mr. Bell is not requesting a transfer for the convenience of his counsel, nor is he suggesting the Court should grant a transfer without weighing all of the relevant factors.  Rather, Mr. Bell has demonstrated that a transfer *will*

---

[5]  The defendant was a travel agency that had sought out business with a hotel located in D.C., had traveled there to do business with the hotel, and agreed by a contract to a D.C. forum selection clause. *Sheraton*, 84 F. Supp. at 26.

increase the net convenience. Bell Mem. § IV(A)(2). Indeed, the SEC is the party arguing that a

forum is more convenient because of the location of its attorneys. Opp at 16. The location of

counsel, however, is immaterial to any Section 1404(a) balancing. *See Securities & Exch.

Comm'n v. Ernst & Young*, 775 F. Supp. 411, 416 (D.D.C. 1991).

**b.     The Public Interest Factors Also Weigh In Favor Of
Transferring This Action To The District of Maryland**

The public interests factors also weigh, on balance, in favor of transferring this action to

the District of Maryland. Mr. Bell has demonstrated that transfer will not lead to unnecessary

congestion or delay, and that the local interest of having local controversies decided at home also

weighs in favor of transfer. Bell Mem. § IV(A)(2)(b). It is well-settled that "controversies

should be resolved in the locale where they arise and where related litigation existed." *Kafack v.

Primerica Life Ins. Co.*, 934 F. Supp. 3, 9 (D.D.C. 1996). The purported claims against Mr. Bell

arose in the District of Maryland and the parties agree that the majority of witnesses and

information relevant to this action are located there. Opp at 16 & 17. Thus, the District of

Maryland has a strong interest in deciding the case. *See Oceanic Exploration Co. v. Conoco

Phillips, Inc.,* No. 04-332, 2007 U.S. Dist LEXIS 7915, *16 (D.D.C. Feb. 5, 2007) (public

interest factors weighed in favor of transfer to the District where the defendant's headquarters

was located).[6]

In opposition, the SEC argues that the public interest weighs in favor of keeping this case

in this District because related cases have been litigated in this District. Opp at 17. However, all

of the related cases in this District have been resolved. *Id*. at n.15. Set against this lack of

present activity in this District is the presence of litigation pending before the District of

Maryland, which the SEC concedes arises out of the same allegedly fraudulent conduct. *Id.*; Bell

Mem. § IV(A)(2)(b). Moreover, notwithstanding the SEC's inaccurate assertion to the contrary,

one of the lawsuits currently pending in Maryland involves the same type of vendor letters at

---

[6] The SEC concedes in its Opposition that "the local interests in this controversy might be slightly great
in the District of Maryland, where USF and its auditors are located." Opp at 17.

issue in this case.  *Id*. § IV(A)(2)(b).  That SEC action involves claims against the former Chief Marketing Officer of USF, Mark P. Kaiser, who is alleged to have signed "the vast majority" of the audit confirmation letters, including the audit confirmation letter allegedly signed by Mr. Bell on behalf of Hunt-Wesson Foodservice.  *Id*. at 23 n.21.  Thus, there is no evidence that the District of Columbia is more familiar with the relevant issues than the District of Maryland, such that it would benefit the public interest to keep this case in this District.[7]

In sum, a discretionary transfer pursuant to Section 1404(a) is warranted given the substantial nexus between the SEC's allegations and the District of Maryland, the considerations of convenience, and the interests of justice.

## III.    IF THE COURT DECLINES TO STAY OR TRANSFER THIS CASE, IT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE

Mr. Bell also asks this Court, should it decline to either stay or transfer this action, to dismiss all claims asserted against him for failure to state a claim under Fed. R. Civ. R. 12(b)(6) or failure to satisfy Fed. R. Civ. P. 9(b)'s particularity requirement.

### A.    All Claims Are Defective Because A Subsidiary Of An Issuer Is Not An Issuer

Mr. Bell demonstrated that the Complaint fails to state claims against Mr. Bell for aiding and abetting violations of the statutes invoked in Claims 2 and 3 (Exchange Act Sections 13(a) and 13(b)(2), 15 U.S.C. §§ 78m(a), 78m(b)(2)).  As the SEC acknowledges, these statutes regulate the financial reporting, recordkeeping, and SEC filing obligations of an "issuer."  *See* Opp at 19.  Mr. Bell demonstrated that the Complaint fails to allege that he had any interaction whatsoever with an "issuer," let alone that he was asked to comment or provide information for an issuer's books and records or SEC filings.  Bell Mem. § V(A).  Instead, the Complaint alleges that Mr. Bell interacted with unspecified person(s) at USF, and was asked about USF's books

---

[7]  In a related argument, the SEC contends that Mr. Bell has not shown that the District of Maryland is substantially more familiar with applicable laws than this Court.  Opp at 17.  The argument, however, is irrelevant because any United States District Court is capable of adjudicating federal question cases. *Liban v. Churchey Group II, L.L.C.*, 305 F. Supp. 2d 136, 143 (D.D.C. 2004).

and records.  The Complaint does not allege that USF is an issuer, nor does it allege that any facts which, if true, qualify USF as an issuer.  *Id.* at 28.  For similar reasons, the Complaint fails to state a claim for aiding and abetting securities fraud, as alleged in Claim 1, due to the absence of the "in connection with element" of a Section 10(b) claim.  *Id.* § V(B)(2).  The only company alleged to have interacted with Mr. Bell was USF, and USF is not alleged to have issued securities or made any statements to investors regarding securities.  *Id.*; *see also id.* § II(A).

In opposition, the SEC concedes by silence that the Complaint does not allege that USF is an issuer.  It does not contend that the Complaint alleges that Mr. Bell had any contact with any company other than USF, or was asked to comment on or provide information for or about the books and records of any company other than USF.  Instead, the SEC contends that these holes in the Complaint do not matter.  According to the SEC, it suffices that the Complaint alleges that USF was a subsidiary of a separate entity, Ahold; and that Ahold was an issuer whose financial statements were falsified by mis-information from USF, downstream from Mr. Bell's interactions with USF.  The SEC asserts that these allegations provide a "logical connection" between the alleged USF-Bell interactions and the alleged securities law violations by issuer Ahold (which, of course, was a stranger to Mr. Bell), and that such a "logical connection" or "effect" on an issuer suffices to state a claim.  Opp at 20, *citing* Complaint ¶¶ 9, 11 (discussing Claims 2 and 3); *see also* Opp 22 n.17, *citing* Complaint ¶¶ 1, 5, 9, 18 (using "effect" in discussing the "in connection with" element of Claim 1).[8]

The SEC fails to cite any case law or statutory support for these propositions.  Indeed, its theories would expand the scope of securities liability far beyond that contemplated by case law and statute, for two reasons.  <u>First</u>, if it suffices to allege a mere "logical connection" between matters concerning an entity that is not an issuer (in this case, USF) and an issuer (in this case, Ahold), or that a matter concerning a non-issuer had an "effect" on an issuer, a potentially

---

[8]  Contrary to the SEC's contention on page 20 of its brief, Mr. Bell did not ignore or avoid the (sometime inchoate) allegations that USF was a subsidiary of Ahold, and that alleged fraud at USF found its way onto Ahold's books.  *See* Bell Mem. at 5 (USF was subsidiary of Ahold); *id.* at § II(D).

unlimited range of activities, transactions or communications between persons could fall within the regulatory ambit of the securities laws, *unconstrained by any requirement that the activity, transaction or communication involve an issuer*. This would untether the scope of the securities laws from the statutory definition of "issuer," which, as Mr. Bell noted, is "any person who issues or proposes to issue any security." Bell Mem. § V(A), *quoting* 15 U.S.C. § 78(c)(8).[9]

Second, the SEC would erase the separate legal existence of USF as a subsidiary. This, too, would conflict with the statutory definition of "issuer," which does not mention nor include subsidiaries of issuers (where those subsidiaries themselves do not issue securities). It also would conflict with the manner in which subsidiaries are treated in at least one other securities fraud context: courts do not equate a subsidiary with its issuer parent for scienter purposes, but instead require that the scienter of each entity be pleaded and proven individually. *See*, *e.g.*, *Chill v. General Electric Co.*, 101 F.3d 263 (2d Cir. 1996).

Mr. Bell was not asked to, nor did he, comment on or provide information for the books and records of any issuer, or any company that made SEC filings or public statements to investors. His alleged interaction was with and about USF only. USF is not an issuer. Accordingly, the Court should dismiss all claims as to Mr. Bell.

> **B.    The Complaint Does Not Allege That Mr. Bell Knowingly Rendered Substantial Assistance To A Securities Fraud**

Mr. Bell also demonstrated that Claim 1 (for aiding and abetting securities fraud under Exchange Act Section 10(b)) is deficient for another reason: the Complaint fails to allege that Mr. Bell knowingly provided substantial assistance to a securities fraud. The Complaint alleges that Mr. Bell's sole interaction was with and about USF, which as discussed above did not issue

---

[9]  This harm is particularly salient in this case, where all claims against Mr. Bell are asserted not as direct violations of statute, but as aiding and abetting claims. Aiding and abetting, by its nature, involves an element of knowledge and volition on the part of the aider or abettor. Yet under the SEC's theory, a person could be liable as an aider or abettor by engaging in a transaction or making a communication without any knowledge that an issuer or securities was involved, where (as here) no issuer was even so much as mentioned in the transaction or communication. This point is discussed further in connection with the aiding and abetting securities fraud claim in Section III(B), *infra*.

securities nor make public statements to investors. With no issuer of securities in his purview, Mr. Bell could not have known that any alleged information he provided about USF was part of someone else's securities fraud; and it is not alleged that he did know that, in fact, any information he provided would be used for that purpose.

In opposition, the SEC asserts that the Complaint alleges that Ahold issued false financial statements due to the misdeeds of USF employees (Opp § III(3)(A)); and that Mr. Bell had a general awareness of his "role" in these misdeeds because he provided false information to USF's employees and outside auditors (*id*. § III(3)(B)), which eventually made its way into Ahold's inflated earnings numbers. *Id*. § III(3)(C). The SEC focuses almost exclusively on the allegedly false nature of the information Mr. Bell allegedly provided to USF's auditors. The SEC, in essence, contends that all that is required to knowingly provide substantial assistance to a securities fraud is providing false information to someone, so long as that false information eventually finds its way into some securities issuer's financial statements.

The SEC's theory suffers from two significant, related deficiencies. <u>First</u>, it again relies upon a purported connection between Mr. Bell and Ahold, when the Complaint's allegations pertain solely to USF. There is no allegation in the Complaint that Mr. Bell was asked about Ahold or provided information to Ahold's auditors. Indeed, as far as can be told from the Complaint, Ahold was a complete stranger to Mr. Bell; Mr. Bell's alleged interactions were with and about USF, and there is no suggestion that Mr. Bell knew that any other entity was involved. Even as to USF, there is no allegation in the Complaint that Mr. Bell knew that the information he allegedly provided about that non-issuer ultimately would find its way to the public. To the contrary—as Mr. Bell pointed out, and the SEC does not address—the Complaint alleges that Mr. Bell was told that the information contained in the letter proffered by USF to Mr. Bell represented just the *internal* numbers of USF. Bell Mem. § V(B)(1).

<u>Second</u>, the SEC posits a securities fraud without securities. It is not enough that false information is provided. Misrepresentations occur all the time that do not fall within the ambit of *securities* fraud. Rather, the false information must be provided ***in the context of a securities***

*transaction* or *about a securities issuer*, and the defendants must *know* that context when they provide the information. This is shown in the cases cited by the SEC itself with regard to the state of mind of a securities fraud aider and abettor. The defendants in those cases allegedly provided false information in and about securities transactions, *Howard v. Securities & Exch. Comm'n*, 376 F.3d 1136, 1143 (D.C. Cir. 2004) (cease and desist, suspension, and civil penalty order reversed in proceeding alleging that broker aided and abetted securities fraud in the course of closing private placement offerings); or provided false information about a securities issuer to the auditors of the issuer, *Ponce v. Securities & Exch. Comm'n*, 345 F.3d 722, 737 (9th Cir. 2003); or provided false information to the public about the management of a securities issuer, *Securities & Exch. Comm'n v. Apolant*, 411 F. Supp. 2d 271, 277 (ED.D.N.Y. 2006).[10]

Here, in contrast, the Complaint does not allege that Mr. Bell was aware of any securities issuer or securities transaction, or even that he was aware that any information he provided about USF or to its auditors would make its way to the public. The SEC's discussion of *Securities & Exch. Comm'n v. Orr*, No. 04-74702, 2006 WL 542986 (E.D. Mich. Mar. 6, 2006), proves the point. As Mr. Bell explained, *Orr* rejected a claim against a vendor (Bixler) alleged to have aided and abetted an issuer (Kmart's) "improper scheme" of securities fraud, where the complaint did not allege that the vendor knew that the vendor allowance form he signed allowed Kmart to record improper revenue. *See* Bell Mem. at 31.[11] The SEC contends that a claim against another defendant in *Orr*, Kirkpatrick, provides a better analogy to the present case. Opp at 26-27. But Kirkpatrick did not dispute that the complaint alleged that he knew and dealt

---

[10]  *See also Securities & Exch. Comm'n v. Intelliquis Int'l, Inc*., 2003 WL 23356426, *14 (D. Utah 2003) (defendant audited an issuer and allowed false financial statements to be issued by issuer-client); *Securities & Exch. Comm'n v. Stansbury Holdings Corp.*, 2007 WL 552248 (D. Colo. Feb. 20, 2007) (defendant misrepresented value of assets of an issuer). *Investors Research Corp. v. Securities & Exch. Comm'n*, 628 F.2d 168 (D.C. Cir. 1980), considered whether a defendant broker aided and abetted his investment advisors\colleagues' improper professional practices in violation of the Investment Advisors Act.

[11]  The SEC argues that its claim against Mr. Bell is distinguishable because the complaint in *Orr* failed to allege the falsity of the vendor confirmation form. Opp at 26-27. But the issue presented in this motion is not whether the Complaint pleads falsity, but instead whether it pleads that Mr. Bell knowingly assisted in securities fraud.

directly with the issuer (Kmart) with respect to the matters of which he was charged, or that he knew that the false information he provided would be used by that issuer in its public financial statements. *See Orr*, 2006 WL 542986, *2-3. Here, by contrast, the Complaint does not allege that Mr. Bell knew of Ahold or any other issuer, nor that any information he provided about non-issuer USF would be used in the public financial statements of Ahold or anyone else.[12]

Gary Bell cannot be said to have known that he had a "role" in a securities fraud when it is alleged that the only context of which he was aware involved a company that did not issue securities, the actors in the other "roles" were employees or auditors of a company that did not issue securities, and for that matter when he was told that the information he allegedly provided was for internal use only. For this reason, too, Claim 1 must be dismissed.

### C.    The Complaint Does Not Allege A Material Misstatement Resulting From Mr. Bell's Alleged Conduct

Mr. Bell also demonstrated that Claim 1 is deficient for a further reason: the Complaint does not plead any material misstatement to investors resulting from Mr. Bell's alleged conduct. The letter setting forth the Hunt-Wesson vendor allowance allegedly overstated USF's vendor allowance for 2001 by approximately $4.5 million \ €5 million. Even assuming this was incorporated into Ahold's financial statements, it represented an overstatement of Ahold's net income of only 0.46%. Such a difference is immaterial as a matter of law. Investors would not have assessed Ahold's performance any differently had it disclosed its net income without including the Hunt-Wesson vendor allowance. Bell Mem. § V(B)(3).

In opposition, the SEC asserts that *Ganino v. Citizens Util. Co.*, 228 F.3d 154, 162-64 (2d Cir. 2000), holds that materiality cannot be decided at the pleading stage. Opp at 28.[13] But Mr. Bell already anticipated and refuted this argument. *Ganino* did not remove materiality as a

---

[12]  The claims against the other defendant in *Orr*, Orr himself, are even further removed from the allegations of this case, as Orr was an employee of the issuer.

[13]  The SEC also claims that *Orr* counsels against deciding materiality at the pleading stage in an aiding and abetting case against vendors (Opp at 28), yet *Orr* acknowledged that dismissal is appropriate where the alleged misstatements or omissions are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance. *Orr*, 2006 WL 542986 at *12.

pleading (or proof) issue, and courts routinely consider whether an alleged misstatement is material as a matter of law.  *See* Bell Mem. § V(B)(3)(a) (collecting cases).  Rather, *Ganino* found that the defendants *in that case* had engaged in selective argument, such that the complaint alleged a material misstatement using a different financial metrics than the narrow metric (annual revenue) cited by defendants.  *See* Bell Mem. at 35-37 ("The Court then found that the complaint had alleged a material misstatement of financials on other bases than the alleged inflation of revenues.").

In this case, the SEC does not claim that the metric cited by Mr. Bell (2001 net income) is inappropriate, nor suggest that there was some other metric or qualitative factor that would render a 0.46% inflation of net income material to investors.  Indeed, the SEC's implicit argument that any divergence between reported and actual financials, no matter how small, can be material has been rejected.  *See Securities & Exch. Comm'n v. Todd*,  No. 03CV2230, 2007 WL 1574756, *5 (S.D. Cal. May 30, 2007) ("Under this approach, any and all transactions that contribute to [a given financial metric] are material, depending on which one the SEC chooses to focus on at a given moment.  Courts have disapproved of this view of materiality, frequently viewing amounts under a certain threshold as immaterial as a matter of law.")

Faced with the uncomfortable truth regarding the immateriality of Mr. Bell's alleged conduct, the SEC tries to inflate the numbers.  It asserts that the relevant metric in assessing a potential securities fraud claim against Mr. Bell is the $700 million in total inflated vendor allowances allegedly recorded by USF—*i.e.*, the $4.5 million allegedly involving Mr. Bell, and the $695.5 million *not* involving Mr. Bell.  *See* Opp at 28-29.  The SEC presents no authority for this leap, which borders on guilt by association, and it may not take this leap from the allegations of the Complaint.  The Complaint does not allege that Mr. Bell had any connection to or knowledge of any other vendor.  Instead, the SEC, in its brief, attempts to impose conspiracy liability on Mr. Bell, without even attempting to allege a conspiracy claim against him.[14]

---

[14]  Such allegations would be subject to Rule 9(b).  *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-06 (9th Cir. 2003).

    **D.**    **The Complaint Should Be Dismissed Without Leave To Amend**

Mr. Bell asks the Court to dismiss with prejudice, should it consider the dismissal portion of this motion.  Bell Mem. § V(C).  Although the SEC seeks leave to amend should the Court agree with Mr. Bell's contentions and grant the motion to dismiss (Opp at 30), it does not attempt to explain how it could possibly address the Complaint's deficiencies.  The problems with the Complaint are fundamental:  it is a purported securities fraud, false issuer books and records, and false issuer SEC filings case with no issuer and no securities.

**IV.**    **CONCLUSION**

For the reasons set forth above and in Mr. Bell's opening brief, this case should be stayed.  If it is not stayed, it should be transferred to the District of Maryland.  If this case is not stayed or transferred, the Complaint should be dismissed for failure to state a claim.

                            Respectfully submitted,

                            /s/ Nancy A. Luque_____
                            Nancy A. Luque (DC Bar # 419757)
                            Matthew G. Jacobs (*Pro Hac Vice* App. Pending)
                            David Priebe (*Pro Hac Vice* App. Pending)
                            Attorneys for Defendant Gary Bell
                            DLA PIPER US LLP
                            400 Capitol Mall, Suite 2400
                            Sacramento, CA  95814
                            (916) 930-3200
                            (916) 930-3201 (fax)