# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

      v.

JOSEPH GRENDYS, *et al.*,

      Defendants.

Civil Action No. 07-120 (CKK)

## MEMORANDUM OPINION
(September 29, 2008)

Plaintiff Securities and Exchange Commissions ("SEC") filed a Complaint in this case
alleging that Defendant Joseph Grendys and three Co-Defendants aided and abetted violations of
the Securities Exchange Act of 1934 by signing and returning audit confirmation letters that
Defendants knew, or were reckless in not knowing, were materially false.  Grendys is one of two
remaining Defendants in this action, and he has filed the instant [16] Motion to Dismiss pursuant
to Federal Rule of Civil Procedure 12(b)(2) (personal jurisdiction), 12(b)(3) (venue), and
12(b)(6) (failure to state a claim).[1]  The SEC opposed Defendant's Motion on all grounds, and
Defendant has filed a Reply.  After a searching review of the above-referenced party
submissions, including the attachments thereto, applicable case law, statutory authority, and the
entire record of the case as a whole, the Court shall DENY Defendant's [16] Motion to Dismiss,
for the reasons that follow.

---

[1] Defendant Michael Smith consented to entry of judgment against him on April 5, 2007,
and Defendant Greg Bell consented to entry of judgment against him on October 19, 2007.
Defendant Anthony Holohan filed an Answer on April 17, 2007, and remains a Defendant in this
case.

# I. BACKGROUND [2]

The SEC alleges that Defendant was the owner of Koch Poultry, a company that sold

frozen chicken commodities to U.S. Foodservice ("USF"), a wholly owned-subsidiary of

Koninklijke Ahold N.V. ("Ahold").[3]  Compl. ¶ 16.  On or about October 17, 2003, Ahold filed a

Form 20-F for the fiscal year ending December 29, 2002, which contained restatements for fiscal

years 2000 and 2001, corrected accounting adjustments for fiscal year 2002, and re-stated

amounts for fiscal years 1998 and 1999 included in its five-year summary data.  *Id.* ¶ 6.  The

restatements indicated that Ahold had overstated its net income, operating income, and net sales

in its original SEC filings and other public statements.  *Id.*

The SEC alleges that these erroneous filings were, at least in part, facilitated by a scheme

undertaken by USF executives to inflate the value of "promotional allowances" received from its

food distributors.  *Id.* ¶¶ 8-11.  Promotional allowances are payments made by vendors (also

called rebates, allowances, or program money) that formed a significant component of USF's

operating income and profits.  *Id.* ¶ 8.  As part of this scheme, USF personnel contacted vendors

and urged them to sign and return false audit confirmation letters that included fictitious and/or

grossly inflated promotional monies earned, paid, or received.  *Id.* ¶¶ 19-21.  In some instances,

USF personnel issued side letters to vendors, assuring them that they did not, in fact, owe USF

the amounts reflected as outstanding in the confirmation letters.  *Id.* ¶ 21.  These false amounts

---

[2] Because this Memorandum Opinion relates to the Motion filed only by Defendant Grendys, this background section focuses on the material facts only as they relate to Defendant Grendys.

[3] In discussing these facts, the Court accepts as true all well-pleaded factual allegations in the SEC's Complaint, as it must on a Motion to Dismiss.  *See Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979).

were incorporated into Ahold's SEC filings and other public statements.  *Id.* ¶ 9.

Defendant allegedly provided substantial assistance to USF executives by signing and sending to USF's independent auditors a materially false confirmation letter.  *Id.* ¶ 33. Specifically, for the audit of the fiscal year ending December 29, 2001, Defendant received a confirmation letter from USF dated January 24, 2002, that asked Defendant to confirm certain information pertaining to "Marketing and Merchandising Allowances offered by you to [USF]," including the balance due, payments and deductions, allowances earned, and an ending balance. *Id.* ¶ 34.  The letter stated at the bottom, "THE ABOVE INFORMATION IS CORRECT AS OF DECEMBER 29, 2001, except as noted below."  *Id.* (emphasis in original).  Defendant signed the letter without noting any exceptions and returned it to USF's independent auditors.  *Id.*  The SEC alleges that the amounts associated with "Ending Balance due to USF" and "Allowance earned during 2001," were materially misstated, and that other content in the letter was false, such as the letter's statement that "USF had purchased 45,000,000 pounds under the base corporate program with Koch poultry."  *Id.* ¶¶ 35, 36.

On the *same day* that Defendant sent the allegedly false confirmation letter to USF's auditors, Defendant obtained a side letter from USF.  *Id.* ¶ 38.  The side letter referenced the confirmation letter and explained that the information in the confirmation letter was inaccurate. *Id.* ¶ 39.  Among other information, the letter listed, in one column, what the confirmation letter stated, and in an adjacent column, what the real numbers were.  *Id.* ¶ 41.  Defendant did not disclose the side letter or its contents to USF's auditors.  *Id.* ¶ 42.  Based on the above, the SEC alleges that Grendys was aware of several "red flags" or suspicious events, including:

that USF management explicitly encouraged him to sign and send to USF's

3

independent auditors an audit confirmation letter that Grendys knew, or was reckless in not knowing, was (1) materially false, and (2) would misstate USF's books and records and mislead USF's independent auditors.

*Id.* ¶ 43.

## II.  LEGAL STANDARDS AND DISCUSSION

A.      *Motion to Dismiss under Rules 12(b)(2), 12(b)(3)*

Defendant's Motion to Dismiss for improper venue and personal jurisdiction is based on the argument that the SEC has improperly relied on a specific venue and jurisdiction provision in the Securities Exchange Act of 1934.  *See* Def.'s Mot. at 4.  The provision, 15 U.S.C. § 78aa, provides that

> [a]ny criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred.  Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business.

15 U.S.C. § 78aa.  Defendant appropriately concedes that, if this provision creates proper venue in the District of Columbia, then it also confers personal jurisdiction over Defendant.  *See* Def.'s Mot. at 4 ("the SEC relies on a specialized venue provision set forth in the Securities Exchange Act of 1934 to establish *venue* in this District, which, once established, also confers *jurisdiction* in the District") (emphasis in original).  Accordingly, Defendant's Motion under both 12(b)(2) and 12(b)(3) depends on whether the SEC has properly invoked this provision.

Pursuant to 15 U.S.C. § 78aa, a civil enforcement action by the SEC may be brought in the district where "any act" constituting the violation occurred.  *See Investors Funding Corp. v. Jones*, 495 F.2d 1000, 1002 (D.C. Cir. 1974) (per curiam).  The act of filing documents with the

SEC has a locus in the District of Columbia.  *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1154 n.12 (D.C. Cir. 1978).  In cases alleging a common scheme to violate the securities laws, any act committed in the District of Columbia by a participant in furtherance of the scheme, such as the filing of false information with the SEC, will establish venue in the District as to all of the participants, regardless of whether each committed an act in the District.  *See SEC v. Wallace*, 94 F. Supp. 2d 1, 2 (D.D.C. 2000) ("*any* material act committed by one defendant in the District in furtherance of a multi-defendant fraudulent scheme satisfies venue under the Securities Exchange Act of 1934 as to *all defendants* whether or not the other defendants ever committed a violation in the District") (emphasis added).  *See also SEC v. 800America.com, Inc.*, 2006 U.S. Dist. LEXIS 85571 at *16 (S.D.N.Y. Nov. 28, 2006) ("[i]n cases that allege a common scheme to commit violations of federal securities law, any act or transaction within a district by a participant in furtherance of the scheme establishes venue as to any other person who 'knowingly participated' in the scheme").

The Court previously rejected a venue challenge brought by an individual who, like Defendant, was accused of signing confirmation letters confirming promotional allowance figures that were false and that were incorporated into Ahold's SEC filings through USF.  *See SEC v. Daly*, No. 05-55, 2006 U.S. Dist. LEXIS 96384 at *3-*4 (D.D.C. Feb. 11, 2006).  In that case, Daly argued that venue was improper in the District of Columbia because "[Daly] signed all of the documents at issue at his residence in Texas, no part of the case transpired in the District of Columbia, and no witnesses reside [there]."  *Id.* at *5.  The Court held that venue was proper pursuant to 15 U.S.C. § 78aa, finding that "[t]he fact that [Daly] did not personally submit any documents to the SEC in the District of Columbia is irrelevant . . . [because] Defendant, in

5

concert with USF, allegedly aided Ahold in filing fraudulent figures with the SEC in the District of Columbia." *Id.*

Defendant's Motion, which attempts to distinguish *Daly* and argue that venue is improper in this case, is unpersuasive. Defendant argues, for example, that "the SEC alleges no 'common scheme'" among Defendant and his Co-Defendants. Def.'s Mot. at 6-7. Defendant's argument overlooks the SEC's Complaint, which unmistakably alleges the existence of a common scheme that involved Defendant.[4] For example, the SEC's Complaint specifically alleges that Ahold's erroneous SEC filings were facilitated, at least in part, by a scheme undertaken by USF executives to inflate the value of promotional allowances received from its food distributors. Compl. ¶¶ 8-11. As part of this scheme, USF personnel contacted vendors and urged them to sign and return false audit confirmation letters that included fictitious and/or grossly inflated promotional monies earned, paid, or received. *Id.* ¶¶ 19-21. These false amounts were incorporated into Ahold's SEC filings and other public statements. *Id.* ¶ 9. Defendant allegedly provided substantial assistance to USF executives because, like his Co-Defendants, he signed and sent to USF's independent auditors a materially false confirmation letter. *Id.* ¶ 33. These allegations identify Defendant as one of the participants in a scheme who aided and abetted the filing of false information with the SEC. Such allegations are sufficient to place venue in this District. *See, e.g.*, *SEC v. Johnson*, 2008 U.S. Dist. LEXIS 53243 at *30-*31 (D.D.C. Jul. 14,

---

[4] The Court notes that the SEC filed a separate suit against Ahold on October 10, 2004, arising out of the same fraudulent scheme alleged in this case. *See SEC v. Ahold Koninklijke, N.V.*, No. 04-1742, Compl., Docket No. [1] (D.D.C. 2004). Ahold agreed to entry of a consent judgment five days later on October 18, 2004. *Id.*, Final Judgment, Docket No. [4]. The SEC has also brought at least nine other separate complaints against employees or agents of vendors that supplied USF and who allegedly participation in the same fraudulent scheme as is alleged in this case. *See* Pl.'s Opp'n at 2 & n.2 (collecting cases).

2008) (holding that venue was proper in the District of Columbia because the defendant "aided and abetted [a] conspiracy, which culminated in the filing with the SEC in Washington, D.C. of a 10-K and 10-Q that contained fraudulent and misleading financial information").

Defendant's Motion also argues that Daly had no direct dealings with Ahold, and that the SEC's aiding and abetting claims require a "close connection" between a defendant and the district where venue is asserted.  *See* Def.'s Mot. at 4-10.  The applicable case law, however, does not contain the "close connection" requirement that Defendant is seeking to impose.  On the contrary, "'the intent of the venue and jurisdiction provisions of the securities laws is to grant potential plaintiffs liberal choice in their selection of a forum.'" *Johnson*, 2008 U.S. Dist. LEXIS 53243 at *26 (quoting *Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985)). For securities fraud cases involving multiple defendants, courts in this district have recognized, consistent with this intent, that "any act committed material to and in furtherance of an alleged fraudulent scheme will satisfy the venue requirement of the Exchange Act as to all defendants wherever the defendants are found."  *SEC v. Nat'l Student Mktg. Corp.*, 360 F. Supp. 284, 292 (D.D.C. 1973).  In an aiding and abetting case such as the one at present, it is therefore irrelevant that Defendant did not directly engage in conduct with Ahold or in the District of Columbia.[5] Rather, an act by a participant engaged in a common scheme, which would include the present scheme whereby Defendant acted in concert with USF to allegedly falsify information that was

---

[5] Defendant's Reply raises the specter that without a direct connection to the District of Columbia, upholding venue and jurisdiction as to Defendant would "not comport with constitutional due process standards."  Def.'s Reply at 1 (citing no authority).  Constitutional due process under 15 U.S.C. § 78aa, however, requires only that the defendant has minimum contacts *with the United States.  See Bourassa v. Desrochers*, 938 F.2d 1056, 1058 (9th Cir. 1991). Defendant's Reply does not suggest that he lacks such minimum contacts.

reported to the SEC through Ahold's public filings, serves to properly place venue in the District

of Columbia as to all participants who were engaged in that scheme.  Accordingly, the Court

shall deny Defendant's Motion to Dismiss brought under Federal Rules of Civil Procedure

12(b)(2) (personal jurisdiction) and 12(b)(3) (venue).

       B.        *Motion to Dismiss under 12(b)(6)*

Defendant next argues that the SEC has failed to state a claim for relief because the

SEC's Complaint fails to plead sufficient facts related to scienter under an "aiding and abetting"

cause of action.  *See* Def.'s Mot. at 10.  This argument has no merit.  To plead a claim for "aiding

and abetting" in this Circuit, the SEC must plead facts alleging that:

> (1) another party has committed a securities law violation;

> (2) the accused aider and abetter had a general awareness that his role was part of
> an overall activity that was improper; and

> (3) the accused aider and abetter knowingly and substantially assisted the
> principal violation.

*Investors Research Corp. v. SEC*, 628 F.2d 168, 178 (D.C. Cir. 1980).  A defendant's "general

awareness" can be established through a showing of "extreme recklessness," which may be found

by showing that the aider and abetter encountered "red flags" or "suspicious events creating

reasons for doubt.'"  *Howard v. SEC*, 376 F.3d 1136, 1143 (D.C. Cir. 2004).

The Complaint alleges plausible facts supporting the existence of such "red flags" or

"suspicious events."  In particular, Defendant allegedly signed a confirmation letter certifying the

accuracy of false financial information, and *on the same day* he received a side letter that

informed him of the correct information.  Compl. ¶¶ 34-38.  Among other things, the letter listed,

in one column, what the confirmation letter stated, and in an adjacent column, what the real

8

numbers were.  *Id.* ¶ 41.  Defendant did not send the side letter or reveal its contents to USF's

independent auditors.  *Id.* ¶¶ 38, 42.  The discrepancy in this information, combined with the

close proximity in time between the confirmation and the side letter, are sufficient facts to

support the element of knowledge or extreme recklessness under D.C. Circuit precedent.  *See*

*Howard*, 376 F.3d at 1143-44.

Defendant's arguments to the contrary are unavailing.  Defendant argues that Defendant

lacked "direct" knowledge of the confirmation letter's illicit purposes, that the SEC's Complaint

does not allege that anyone told Defendant of the confirmation letter's illicit purposes, and the

SEC's Complaint does not allege that Defendant had any contact with Ahold.  Def.'s Mot. at 10-

15.  These arguments are immaterial for purposes of a Motion to Dismiss, where the Court's

inquiry is focused on whether the SEC has alleged sufficient facts to support its claim for relief.[6]

*See Bell Atl. Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (holding that a

complaint must allege a "plausible entitlement to relief").[7]  Because the Court finds that the

SEC's Complaint has alleged sufficient facts supporting its aiding and abetting allegations

---

[6] Defendant's Reply contains many arguments attempting to demonstrate that the facts alleged by the SEC are innocuous and that Defendant lacked sufficient knowledge of the alleged scheme.  *See, e.g.*, Def.'s Reply at 5-9.  While Defendant may want to pursue these arguments in discovery and later Court filings, these arguments cannot overcome the Court's inquiry into whether the SEC has *pled* sufficient facts supporting its asserted cause of action.  Defendant also attaches a particular trial transcript to his Reply in support of his arguments concerning scienter.  The Court has reviewed this transcript and finds that it directly undermines Defendant's scienter arguments because it reflects a specific awareness by Defendant of the incorrect information contained in the confirmation letter.  *See* Def.'s Reply, Ex. A at 1759 (10/25/06 Trial Transcript).

[7] The above facts also distinguish this case from *SEC v. Lucent Technologies, Inc.*, a case on which Defendant relies, because in that case the "knowledge" element of the SEC's claim (as to one of two defendants) depended on the defendant's knowledge of accounting principles and internal company policies, neither of which is required to establish knowledge or extreme recklessness in this case.  No. 04-2315, 2005 WL 1206841 at * 5 (D.N.J. May 20, 2005).

against Defendant, the Court shall deny Defendant's Motion to Dismiss brought under Federal Rule of Civil Procedure 12(b)(6).

### III.  CONCLUSION

For the reasons set forth above, the Court shall DENY Defendant's [16] Motion to Dismiss.  The Court shall schedule an Initial Scheduling Conference for the two remaining Defendants in this case, Defendants Grendys and Holohan.  An appropriate Order accompanies this Memorandum Opinion.


Date:   September 29, 2008


_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge